SMITH, Director of Transportation, Appellee,

v.

GILBRAITH et al., Appellants.

[Cite as *Smith v. Gilbraith* (1991), 75 Ohio App.3d 428.]

Court of Appeals of Ohio,
Ashtabula County.

No. 90–A–1559.

Aug. 5, 1991.

*Lee I. Fisher,* Attorney General, *Ronald H. Snyder, Vincent P. Korey, John C. Thorne, Jr.,* and *John R. Guia,* Assistant Attorneys General, for appellee.

*James M. Lemieux* and *Jerome A. Lemire,* for appellants.

FORD, Presiding Judge.

This is an appeal from a judgment of the Ashtabula Court of Common Pleas authorizing the appropriation of a perpetual easement in 24.336 acres of property located more than three hundred feet from the nearest edge of the I–90 right-of-way.

On September 18, 1986, appellee, Warren J. Smith, Director of Transportation ("DOT"), petitioned to appropriate twenty-seven acres in fee simple pursuant to R.C. 163.04 for the purpose of "making or repairing" roads, specifically a portion adjacent to I–90 in Conneaut Township of Ashtabula County. Appellants, Alice R. Gilbraith, and others, whose property was included in the land the DOT wanted to appropriate, contested the petition. They argued that it was not for the purpose of constructing or improving I–90, but for the purpose of constructing a rest area and tourist information

area. Asserting that the project was clearly a roadside park and not a road improvement, appellants maintained that R.C. 5529.03, and not R.C. Chapter 163 *et seq.*, governed the appropriation.

By June 22, 1987, the state of Ohio through the DOT had caused the commencement of construction on the property. Consequently, on June 23, 1987, appellants filed a motion for a temporary restraining order (TRO) in the Ashtabula Court of Common Pleas.

On June 28, 1987, the DOT filed an amended petition for appropriation, dividing the property to be appropriated into two parcels: *Parcel No. 2-WL*, in which the DOT proposed appropriating a fee simple interest in 2.785 acres located within 300 feet from the nearest edge of the I-90 right-of-way; and *Parcel No. 2-LA*, where the DOT proposed taking a "perpetual easement and right-of-way for public highway use and road purposes" in 24.336 acres located more than 300 feet from the nearest edge of the I-90 right-of-way.

On August 7, 1987, a hearing was held on the TRO motion. In a judgment entry filed August 12, 1987, the trial court denied appellants' motion for a TRO. The trial court found that R.C. Chapter 163, and not R.C. Chapter 5529, governed the appropriation. Appellants appealed this decision on September 8, 1987.

Subsequently, on February 8, 1988, during the pendency of the appeal, this court granted appellants' request for a TRO, conditioned upon the posting of a $25,000 bond, which was deposited on February 16, 1988.

This court dismissed appellants' appeal pursuant to R.C. 163.09(B) on May 9, 1988, for lack of a final appealable order. In so doing, this court found that there was no conflict between R.C. 5529.03 and R.C. Chapter 163, and that these sections were meant to be read *in pari materia*. See *Smith v. Gilbraith* (1988), 48 Ohio App.3d 47, 548 N.E.2d 281 (*"Smith I"*).

The case returned to the trial court, and the DOT filed a motion for forfeiture of the $25,000 bond posted to effectuate the TRO issued by *this* court in February 1988. On July 20, 1988, the trial court granted the DOT's motion, and appellants appealed to this court a second time on July 28, 1988.

Appellants' second appeal pertaining to the trial court's ruling on the forfeiture of the $25,000 bond was dismissed for lack of a final appealable order. See *Smith v. Gilbraith* (Mar. 19, 1990), Ashtabula App. No. 88-A-1393, unreported, 1990 WL 28666 (*"Smith II"*).

The case resumed in the trial court where appellants filed a motion requesting that the trial court return the $25,000 bond. This motion was summarily overruled.

On July 3, 1990, the trial court held the requisite hearing pursuant to R.C. 163.09(B) to consider appellants' motion contesting the validity of the DOT's appropriation.

In a judgment issued on September 14, 1990, the trial court found, *inter alia,* that the requirements for upgrading the rest area system throughout the state of Ohio imposed under R.C. 5529.06 could not be carried out within the "fee simple" distance limitations of R.C. 5529.03, due to the high volume of motorists using I–90. Accordingly, the court found that the DOT was empowered to appropriate a non-fee simple perpetual easement beyond the three-hundred-foot limitation as a "necessary" appropriation for the establishment of rest and recreation areas, and sanitary and other facilities under R.C. 5529.03.

On October 19, 1990, the court issued its judgment entry relative to the issue of compensation and damages resulting from the appropriation. In its judgment entry the court set compensation and damages at $42,300. However, the court noted that upon an agreed settlement and stipulation, the judgment would not affect the parties' right to appeal on issues pertaining to the state's authority to acquire a perpetual easement in appellants' land beyond the three-hundred-foot limitation set forth in R.C. 5529.03 for the purpose or purposes in question.

Appellants timely filed their notice of appeal raising the following assignments of error:

"1. The trial court erred when it found that the Department of Transportation had authority to take a 'perpetual easement with no right of entry' in Defendant's property beyond 300 feet from the nearest edge of the highway right-of-way.

"2. The trial court erred when it ruled on July 20, 1988 that the Plaintiff had sustained $25,000 damages as a result of the Temporary Restraining Order issued by the Court of Appeals in Smith v. Gilbraith [1990 WL 28666] (Court of Appeals, Eleventh District 1988) and ordered a forfeiture of the $25,000 bond posted by Defendants and their sureties."

In the first assignment of error, appellants contest the DOT's right to appropriate a "perpetual easement" beyond the three-hundred-foot limitation contained in R.C. 5529.03. Appellants claim that regardless of the label, the interest taken by the DOT was tantamount to an appropriation in fee simple violative of R.C. 5529.03.

In order to determine the validity of the DOT's appropriation, this court must assess the powers of eminent domain delegated to the state of Ohio and

DOT under Title 55 of the Ohio Revised Code, specifically R.C. Chapters 5501 and 5529.

R.C. 5501.31 generally authorizes the director to:

" * * * purchase or appropriate property *necessary* for the location or construction of any * * * highway improvement, and may purchase or appropriate, for such length of time as is necessary and desirable, such additional property as is required for the construction and maintenance of * * * *roadside parks, rest areas, recreational park areas,* * * * *incident to any highway improvement, which he is or may be authorized to locate or construct.* * * * " (Emphasis added.)

R.C. 5529.03 grants the director the authority to appropriate property for:

" * * * the *establishment of* publicly owned and controlled *rest and recreation areas and sanitary and other facilities* within or adjacent to the right-of-way of said highways *to accommodate the traveling public.* * * * " (Emphasis added.)

However, this authority is granted with the restriction that "[n]othing in this section authorizes the director to appropriate *fee simple title* to real property *further than three hundred feet from the nearest edge of the highway right-of-way.*" (Emphasis added.) *Id.*

R.C. 5529.03 does not expressly *preclude* the DOT from appropriating an easement beyond the three-hundred-foot limitation. Nevertheless, because grants of the power to exercise eminent domain must be strictly construed, see *Ohio Power Co. v. Deist* (1951), 154 Ohio St. 473, 43 O.O. 420, 96 N.E.2d 771, it is imperative to pinpoint clear legislative authority for appropriating non-fee simple interests beyond the three-hundred-foot limitation. This may be accomplished by reading R.C. 5529.03 in conjunction with R.C. 5529.06(A).

Again, R.C. 5529.03 authorizes the appropriation of *any interest* in real property adjacent to highways as is necessary for the establishment of rest and recreation areas, with the limitation that a fee simple interest must be confined to a three-hundred-foot area adjacent to the nearest edge of the highway right-of-way. However, R.C. 5529.06(A) dictates that the director shall develop and implement a system of roadside rest areas along the interstate highway system, " * * * in accordance with standards developed by the department of transportation as approved by the appropriate state and federal agencies. * * * "

In this regard, Section 752.2(c), Title 23, C.F.R. states:

"The development of the roadside to include landscape development, *safety rest areas,* and the preservation of valuable adjacent scenic lands *is a necessary component of highway development.* Planning and development

of the roadside should be *concurrent with or closely follow that of the highway.* Further, the development of travel information centers and systems is encouraged *as an effective method of providing necessary information to the travelling public."* (Emphasis added.)

A "safety rest area" is defined as:

*"A roadside facility* * * * with parking and such facilities for the motorist *deemed necessary for his rest, relaxation, comfort and information needs.* * * * " (Emphasis added.) Section 752.3(a), Title 23, C.F.R.

Under this statutory scheme, *any* appropriation for the establishment of such facilities must meet with federal approval. Accordingly, if the DOT presents evidence tending to show that smaller appropriations would not fulfill federal safety prerequisites, then appropriations beyond the three-hundred-foot limitation would, by implication, be "necessary" under R.C. 5501.31 and 5529.03, and, thus, authorized.

In the instant case, the DOT presented testimony that the facility contemplated would service a high volume of trucks and automobiles, and that a *safe* facility could not be built within the three-hundred-foot limitation. Moreover, the DOT offered testimony that the facility would *not* have gained approval or funding from the Federal Highway Administration if limited to the three-hundred-foot fee simple appropriation.

Appellants offered no evidence to contradict the DOT's contention that the additional apportionment was "necessary." Accordingly, appellants failed to fulfill their burden of proof, and this court must presume the *necessity* of the *area* appropriated. See R.C. 163.08 and 163.09(B).

■ The more difficult question is whether the DOT's appropriation beyond the three-hundred-foot limitation should be characterized as a permissible perpetual easement, or as an interest in fee simple, violative of the strictures of R.C. 5529.03.

In order to determine whether the interest acquired is fee simple or whether it merely constitutes an easement, this court should first look to the declaration of taking in conjunction with the statutory authorization under which the DOT claimed it acted.

The parcel in question is designated in the DOT's amended petition for appropriation as "a perpetual easement and right of way for public highway use and road purposes, including limitation of access" in 24.336 acres titled to appellants. As such, the interest which the DOT purports to take does not appear to transgress the statutory limitations imposed by R.C. 5529.03.

Nevertheless, appellants urge this court to look beyond the label placed on the DOT's interest, asserting that: (1) no viable uses remain in appellants; (2)

the statutory limitation on the DOT is so slight as to be illusory; and (3) a "perpetual easement" which permits the establishment of permanent, substantial structures nullifies the effect of the three-hundred-foot fee-simple limitation, and militates strongly in favor of the existence of a fee simple.

The Restatement of the Law, Property (1944), Section 450, has defined an "easement" as an interest in the land in the possession of another which: (a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists; (b) entitles him to protection as against third persons from interference in such use or enjoyment; (c) is not subject to the will of the possessor of the land; (d) is not a normal incident of the possession of any land possessed by the owner of the interest; and (e) is capable of creation by conveyance.

Stated differently, an easement is an interest in the land of another, carrying only a right to *use* the land. The easement may be perpetual and exclusive, yet it differs from a fee in that the holder of the easement: (1) has no estate in land; (2) can make use of the land only for a limited purpose; (3) cannot control the freehold itself; and (4) once the holder of the easement abandons his prescribed use, the property reverts to the feeholders. See, generally, Thompson, Commentaries on the Modern Law of Real Property (1980), Section 319.

In the instant case, the DOT's interest is limited by the purposes enunciated in R.C. 5529.03. While the DOT's establishment of a roadside rest, recreation, and tourism center may be perpetual, it is a limited *use* and not an estate in land. The DOT has no control over appellants' ability to dispose of the underlying freehold or the rights enuring from it, and once the DOT abandons the prescribed use, it reverts to appellants. As such, the title acquired by the DOT may be properly characterized as an easement.

Based on the foregoing, appellants' first assignment of error is without merit.

In the second assignment of error, appellants contend that the trial court erred when it ordered the forfeiture of the $25,000 bond posted by appellants and their sureties to effectuate the temporary restraining order issued by this court on February 8, 1988. We agree.

Civ.R. 65(C) provides:

"No temporary restraining order * * * is operative until the party obtaining it gives a bond executed by sufficient surety, approved by the clerk of the court granting the order * * *, in an amount fixed by the court or judge allowing it, to secure to the party enjoined the damages he may sustain, *if it*

*is finally decided that the order * * * should not have been granted."*
(Emphasis added.)

Under Civ.R. 65(C), the court issuing the TRO may condition its issuance on the posting of bond in an amount sufficient to secure the party enjoined from any damages sustained, " * * * if it is finally decided that the order * * * should not have been granted." Implicit in this statement is the concept that the only court vested with the authority and jurisdiction to determine whether a TRO was properly granted is the issuing court.

In *Smith II, supra,* this court noted that we "did not erroneously grant a TRO," stating further that:

"The TRO was appropriately granted in order to prevent potential irreparable harm before the matter could be heard on the merits. This court never dismissed or dissolved the TRO and never found that it was improperly granted. * * * Since there was never any finding that the TRO was improperly granted, damages on the bond are precluded by Civ.R. 65(C) * * *."

Based upon our decision in *Smith II,* and the clear dictates of Civ.R. 65(C), counsel for the state conceded during oral argument that the trial court was without a jurisdictional basis upon which to entertain DOT's motion for forfeiture of the $25,000 bond required by this court as a condition for the TRO's issuance. We are in agreement with counsel's concession, and therefore conclude that the trial court erred when it ordered forfeiture. Accordingly, appellants' second assignment of error is with merit.

Based on the foregoing, the judgment of the trial court is affirmed as to appellants' first assignment of error and reversed as to appellants' second assignment of error, and judgment is entered for appellants.

*Judgment accordingly.*

CHRISTLEY and NADER, JJ., concur.