49 F.3d 237
 148 L.R.R.M. (BNA) 2716, 129 Lab.Cas. P 11,292
 The JOHNSON & HARDIN COMPANY, Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner,
Graphic Communications International Union, Local 508,
O-K-I, AFL-CIO, Intervenor.
 Nos. 93-5068, 93-5161.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 22, 1994.
Decided March 14, 1995.
 
 Tracy L. McMath (briefed), Michael Hawkins (argued and briefed), Dinsmore & Shohl, Cincinnati, OH, for petitioner cross-respondent.
 Laura E. Atkinson, N.L.R.B., Region 9, Cincinnati, OH, Aileen A. Armstrong, Deputy Associate General Counsel, Howard E. Perlstein (briefed), John Fawley (argued and briefed), N.L.R.B., Appellate Court Branch, Washington, DC, for respondent cross-petitioner.
 Before: WELLFORD, BOGGS, and SILER, Circuit Judges.
 SILER, J., delivered the opinion of the court, in which BOGGS, J., joined. WELLFORD, J. (p. 244), delivered a separate concurring opinion.
 SILER, Circuit Judge.
 
 
 1
 Petitioner Johnson & Hardin Co. ("J & H") appeals the decision of the National Labor Relations Board (the "Board") finding that J & H violated Sec. 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. Sec. 158(a)(1), by: (1) preventing union organizers from distributing union literature to J & H's employees on property over which J & H had only an easement for ingress and egress; and (2) filing criminal trespass complaints that lacked a reasonable basis in law and fact in retaliation for the union organizers' protected activities. Having found a violation of the NLRA, the Board instructed J & H to request the dismissal of the criminal trespass complaints, petition the court to expunge the criminal records of the union organizers, reimburse the organizers for legal fees and expenses, and post appropriate notices. For reasons stated herein, we enforce the order of the Board only insofar as it bars J & H from interfering with the distribution of union material on easement property. The order of the Board is vacated with respect to the criminal trespass and legal fees issues.
 
 I.
 
 2
 J & H is engaged in the printing of books and other materials at its plant in Fairfax, Ohio. The sole access to J & H's plant is by way of a 22-foot-wide, paved driveway. That driveway extends approximately 100 feet from the property line of the plant premises over land owned by the State of Ohio to a public road known as Red Bank Road. The State of Ohio acquired this property under its power of eminent domain for purposes of a perpetual highway easement. J & H maintains the driveway and has obtained insurance to cover liability for events that occur on its easement. J & H has posted "no trespassing" signs in several locations around the facility, including one on each side of the driveway.
 
 
 3
 On April 27, 1988, Graphic Communications International Union Executive Vice-President Harold Perry and two other union members as labor organizers distributed packets of union materials to J & H employees. The three men stationed themselves along the driveway and handed the materials to J & H's first-shift employees as they were entering the plant and to the third-shift employees as they were leaving.
 
 
 4
 At 6:45 a.m., J & H Vice-President of Manufacturing William Scarpaci drove onto J & H's driveway and accepted a packet of union literature from one of the union organizers. He then drove up the driveway, parked his car, and walked back to where the union organizers were standing. Scarpaci told the men that they were trespassing on J & H's property and asked them to leave. The men moved closer to the public road, but remained on the easement. Scarpaci returned about fifteen minutes later, accompanied by a group of employees, and again asked the organizers to leave. The organizers complied with this second request to leave.
 
 
 5
 When he returned to the plant, Scarpaci called the Fairfax police, who arrived after the organizers had departed. Later that day, the union filed an unfair labor practice charge with the Board against J & H. J & H then filed complaints in the Mayor's Court for the Village of Fairfax, Ohio, alleging that the three union organizers had violated a county criminal trespass ordinance by entering onto J & H's property. Warrants were then issued for the arrest of the organizers.
 
 
 6
 The administrative law judge ("ALJ") ruled that J & H had violated Sec. 8(a)(1) of the NLRA by preventing the union organizers from distributing union literature to J & H employees on property over which J & H had only an easement for ingress and egress. The Board agreed and further found that J & H had violated Sec. 8(a)(1) of the NLRA by filing the criminal trespass complaints that lacked a reasonable basis in law and fact in retaliation for the organizers' protected activities.
 
 II.
 
 7
 J & H first claims that it may lawfully prevent union organizers from distributing union literature to J & H's employees on property over which J & H holds an easement for ingress and egress. Section 7 of the NLRA provides in relevant part that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations." 29 U.S.C. Sec. 157. Section 8(a)(1) of the Act, in turn, makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in [Sec. 7]." 29 U.S.C. Sec. 8(a)(1). "By its plain terms, thus, the NLRA confers rights only on employees, not on unions or their nonemployee organizers." Lechmere, Inc. v. NLRB, 502 U.S. 527, 532, 112 S.Ct. 841, 845, 117 L.Ed.2d 79 (1992). In NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), the Supreme Court noted that insofar as the employees' right of self-organization "depends in some measure on their ability to learn the advantages of self-organization from others," Sec. 7 of the NLRA may, in certain limited circumstances, restrict an employer's right to exclude nonemployee union organizers from his property. Id. at 113, 76 S.Ct. at 684. However, the general rule remains that Sec. 7 does not protect nonemployee union organizers except in the rare case where "the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels...." Id. at 112, 76 S.Ct. at 684. Where the inaccessibility of employees makes such reasonable efforts ineffective, the employer's right to exclude the union organizers from its property must yield to the extent necessary to permit the communication of information concerning the right to organize. Id. This exception to the general rule that an employer may deny access to nonemployee organizers is a "narrow one." Lechmere, 502 U.S. at 539, 112 S.Ct. at 849.
 
 
 8
 The ALJ held that J & H's driveway "was on land owned by the State of Ohio in which [J & H] possessed only an easement for ingress and egress" and that the union's activities "posed a minimal if any interference with that right." Thus, the ALJ held J & H's exclusion of the union organizers from this property violated the NLRA. The Board affirmed.
 
 
 9
 J & H urged the Board to consider its decision in Jean Country, 291 N.L.R.B. 11 (1988), and thereby determine whether the union, without access to the driveway, would have had reasonably effective alternative means to convey its message to J & H's employees. The Board refused, finding that
 
 
 10
 [t]he balancing test set forth in Jean Country--of which assessment of reasonable alternative means is part--is applicable, however, only in cases where property rights and Section 7 rights conflict. When an employer does not possess a property interest entitling it to exclude individuals from the property even if their presence were not protected by Section 7, the employer's exclusion of such individuals from the property does not implicate Jean Country 's balancing test.
 
 
 11
 The Board also found that, in order to invoke Jean Country 's balancing test, the employer must meet the threshold burden of showing that it possesses such a property interest. The Board agreed that J & H had failed to make this showing.
 
 
 12
 J & H now argues that such an analysis is erroneous under Lechmere. In Lechmere, the Supreme Court reaffirmed the general rule from Babcock, which states that "an employer may validly post his property against nonemployee distribution of union literature." Lechmere, 502 U.S. at 538, 112 S.Ct. at 848. The Court specifically rejected the Board's attempt to "recast" that rule as a multifactor balancing test. Id. Therefore,
 
 
 13
 [s]o long as nonemployee union organizers have reasonable access to employees outside an employer's property, the requisite accommodation [between Sec. 7 rights and private property rights] has taken place. It is only where such access is infeasible that it becomes necessary and proper to take the accommodation inquiry to a second level, balancing the employees' and employers' rights....
 
 
 14
 Id.
 
 
 15
 Thus, the union cannot rely on this exception. The exception is a narrow one, applying not where "nontrespassory access to employees may be cumbersome or less-than-ideally effective, but only where 'the location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them.' " Id. at 539, 112 S.Ct. at 849 (quoting Babcock, 351 U.S. at 113, 76 S.Ct. at 685). Examples of such situations include logging camps, mining camps, and mountain resort hotels. Id.
 
 
 16
 The union argues that the problem lies in the Babcock rule itself, which states that "an employer may validly post his property against nonemployee distribution of union literature." Id. at 538, 112 S.Ct. at 848. Thus, as J & H did not own the driveway at issue, it was properly barred from excluding union organizers from conducting their activities there. Lechmere did not address such a situation.
 
 
 17
 In Lechmere, union organizers entered Lechmere's parking lot and placed handbills on the windshields of cars parked in a lot used mostly by employees. After being confronted by the store's manager, the organizers relocated to a publicly owned grassy strip that separated the parking lot from the highway used by the employees. The union organizers passed out handbills from the grassy strip and recorded license plate numbers of cars parked in the employee parking area. They were then able to secure the names and addresses of roughly twenty percent of the store's employees. The union then sent mailings to these employees and made some attempts to contact them by phone or home visits. Further, the union advertised in local newspapers.
 
 
 18
 The Supreme Court found that Babcock 's inaccessibility exception did not apply. The union was unable to establish the "isolation" of employees "from the ordinary flow of information that characterizes our society." Id. at 540, 112 S.Ct. at 849. Establishing such isolation is a heavy burden, and "one not satisfied by mere conjecture or the expression of doubts concerning the effectiveness of nontrespassory means of communication." Id. Therefore, as the union "failed to establish the existence of any 'unique obstacles' that frustrated access to Lechmere's employees, the Board erred in concluding that Lechmere committed an unfair labor practice by barring the nonemployee organizers from its property." Id. at 541, 112 S.Ct. at 850.
 
 
 19
 The ALJ and the Board relied on Wolf v. Roberts, 30 Ohio Op. 499 (Ohio Com. Pl.1945), for the proposition that the owner of an easement "can not prevent even a trespasser from using the land, if it does not impede his exercise of its use as a right of way." Id. at 500. Therefore, as the union organizers' handbilling did not interfere with J & H's right to use the driveway for ingress and egress, the Board ruled that J & H did not have a property interest sufficient to exclude the organizers.
 
 
 20
 A later case, Smith v. Gilbraith, 75 Ohio App.3d 428, 599 N.E.2d 798, 802 (1991), defined an "easement"
 
 
 21
 as an interest in the land in the possession of another which: (a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists; (b) entitles him to protection as against third persons from interference in such use or enjoyment; (c) is not subject to the will of the possessor of the land; (d) is not a normal incident of the possession of any land possessed by the owner of the interest; and (e) is capable of creation by conveyance.
 
 
 22
 However, Smith also notes that, "[s]tated differently, an easement is an interest in the land of another, carrying only a right to use the land." Id.
 
 
 23
 This court's role here is narrow: "The rule which the Board adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced." Beth Israel Hospital v. NLRB, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473-74, 57 L.Ed.2d 370 (1978) (citing NLRB v. Erie Resistor Corp., 373 U.S. 221, 235-36, 83 S.Ct. 1139, 1149-50, 10 L.Ed.2d 308 (1963)).
 
 
 24
 Therefore, the Board's decision that J & H lacked a property right entitling it to exclude the union organizers and that it therefore violated Sec. 8(a)(1) of the Act was rational and consistent with the Act. Thus, the ruling of the Board with respect to this issue is ENFORCED.
 
 III.
 
 25
 Next, J & H claims that the Board erred in its determination that J & H violated Sec. 8(a)(1) of the Act when it filed criminal trespass charges against the nonemployee union organizers in retaliation for their protected activity.
 
 
 26
 In Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), the Court noted that an employer may use a lawsuit as a powerful instrument of coercion or retaliation. It recognized that the expense incurred in defending against a burdensome state lawsuit would have a chilling effect on the willingness of employees to engage in protected activity. Id. at 740-41, 103 S.Ct. at 2168-69. Nonetheless, the Court also recognized that countervailing considerations militate against permitting the Board to condemn the filing of a lawsuit as an unfair labor practice and to enjoin its prosecution. The Court referred explicitly to the First Amendment right to petition the government for redress of grievances and the States' compelling interest in maintaining domestic peace by providing a forum to its citizens for the redress of wrongs. Id. at 741-42, 103 S.Ct. at 2168-70.
 
 
 27
 To accommodate these competing interests, the Court set forth several principles. The Court found that the Board may not enjoin the filing and prosecution of a well-founded lawsuit even if the employer filed the suit with the intent of retaliating against the defendant for exercising rights protected under the Act. Id. at 743, 103 S.Ct. at 2170. Conversely, the Board can enjoin a lawsuit that lacks a reasonable basis if it was filed with a retaliatory motive, because a baseless lawsuit is not protected by the First Amendment. Id. at 743-44, 103 S.Ct. at 2170-71. When confronted with the allegation that the filing of the lawsuit violates the Act, the Board must first determine whether the suit has a reasonable basis in law or fact--that is, whether the suit presents genuine legal or factual issues. Id. at 745-47, 103 S.Ct. at 2171-72. A suit has a reasonable basis in fact if it raises "a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from undisputed facts." Id. at 745, 103 S.Ct. at 2171. A suit has a reasonable basis in law "if there is any realistic chance that the plaintiff's legal theory might be adopted." Id. at 747, 103 S.Ct. at 2172. The Board, however, "need not stay its hand if the plaintiff's position is plainly foreclosed as a matter of law or is otherwise frivolous." Id.
 
 
 28
 If the Board must allow the lawsuit to proceed before the state court and that court ultimately finds merit in the employer's lawsuit, the employer should also prevail before the Board because the filing of a meritorious lawsuit, even with a retaliatory motive, is not an unfair labor practice. Id. at 747, 103 S.Ct. at 2172. However, if the employer does not prevail--the state court judgment is adverse or the suit is withdrawn or otherwise shown to be without merit--the Board may then decide whether the suit was filed with a retaliatory motive. Id. In that situation, the First Amendment interest is satisfied because "the employer has had its day in court, [and] the interest of the State in providing a forum for its citizens has been vindicated...." Id.
 
 
 29
 Under the principles set forth in Bill Johnson's Restaurants, 461 U.S. at 744-47, 103 S.Ct. at 2170-72, the Board erred by interpreting the criminal trespass statute to determine whether the complaints were filed for retaliatory reasons. J & H's filing of criminal trespass charges did not constitute an unfair labor practice against the union. The record supports a genuine issue of material fact with respect to "the proper inferences to be drawn from undisputed facts" presented to the Board. Id. at 745, 103 S.Ct. at 2171. Therefore, the order of the Board finding J & H in violation of Sec. 8(a)(1) of the Act when it filed criminal trespass charges against the nonemployee union organizers in retaliation for their activities will not be enforced.
 
 
 30
 Here, the Board found that the criminal complaints lacked a reasonable basis in law and fact because the organizers' actions occurred on property that was not owned by J & H and J & H did not have an interest in the property sufficient to exclude from it individuals who were not interfering with J & H's right to use the easement. The Board further found that the timing of the filing of the complaints showed that J & H had a retaliatory motive. The complaints were filed after the union had charged J & H with an unfair labor practice, not on the day that the handbilling occurred.
 
 
 31
 J & H points out that "responsible public authorities" concluded there was the necessary probable cause that a criminal trespass had occurred to issue the initial warrants to the union's organizers. However, it admits that no substantial delay occurred for employees entering and exiting Red Bank Road. Further, the ALJ found that at least some delay occurred as a result of the nonemployee union organizers' presence on J & H's driveway. J & H also notes that the criminal ordinance under which the union's organizers were charged did not require J & H to own the property in question. Moreover, J & H had to wait to file the complaints until it learned the organizers' names, which were listed on the unfair labor practice charge.
 
 IV.
 
 32
 Finally, J & H argued that the Board erred in determining that it should reimburse the union organizers for legal fees and expenses incurred as a result of the criminal complaints filed against them and instructing J & H to petition the court to expunge any records concerning the criminal proceedings against the union organizers. The Board has the power, once an unfair labor practice has been committed, to order the wrongdoer to take such affirmative action as deemed necessary to effectuate the policies of the Act. 29 U.S.C. Sec. 160(c). Moreover, when the Board finds that an employer's filing of a lawsuit violates the Act, "the Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorney's fees and other expenses. It may also order any other proper relief that would effectuate the policies of the Act." Bill Johnson's Restaurants, 461 U.S. at 747, 103 S.Ct. at 2172. Here, the Board erred in finding that there "is no basis for distinguishing between employees and nonemployee union representatives as recipients of reimbursement." Bill Johnson's Restaurants did not so hold and the Board has failed to support this finding.
 
 
 33
 Even if the union organizers could rely on Bill Johnson's Restaurants, the actions of J & H do not support the harsh remedy of a grant of attorneys' fees. See Tiidee Products, Inc., 194 N.L.R.B. 1234 (1972), enf'd as mod., International Union of Elec., Radio, and Mach. Workers, AFL-CIO v. NLRB, 502 F.2d 349 (D.C.Cir.), cert. denied, 417 U.S. 921, 94 S.Ct. 2629, 41 L.Ed.2d 226 (1974) (company was ordered to pay litigation costs associated with the NLRB proceeding due to the company's "clear and flagrant violation of the law" to "discourage future frivolous litigation"); Lang Towing, Inc., 201 N.L.R.B. 629 (1973) (setting forth a "frivolous" defense standard for attorney fees). Therefore, the order of the Board requiring J & H to reimburse the union organizers, and to request that their criminal records be expunged, is VACATED.
 
 
 34
 WELLFORD, Circuit Judge, concurring.
 
 
 35
 I concur in Judge Siler's well-considered opinion. I have reservations only with respect to one aspect of the holding. I join in part II on the supposition that the union organizers, when requested, moved from J & H's private easement area to the public area owned by the State of Ohio, "closer to the public road [Red Bank Road]." Thus, I assume the organizers were on, or immediately adjacent to, the public right-of-way and permanent highway easement. Under the circumstances of this case, I disagree with the Board's holding that J & H may not exclude these union organizers from their private right-of-way easement because of an insufficient property interest.