This matter presents a timely appeal from a judgment rendered by the Columbiana County Common Pleas Court finding that plaintiffs-appellees/cross-appellants, Fred W. Polen, et al., (the "Polens") had an exclusive easement in Jones Road beyond the first forty (40) rods and barring defendants-appellants/cross-appellees, Dale E. Gans, et al., (the "Ganses/Turnbulls") from using such property. Additionally, the trial court denied the Polens' claim for trespass damages and the Ganses/Turnbulls' claim for adverse possession.
This appeal arises from a dispute over both the first forty (40) rods (220 yards) and the balance of a right-of-way transversing a one-lane country road commonly known as Jones Road ("Jones Road") which provides access to the property of various landowners, namely: John and Janice Welsh; Dale and Laura Gans and Laura's parents, Les and Ruth Turnbull; Ancil and Edna Jones, parents of Joyce Polen and Janice Welsh; Sarah Dougherty; and Fred and Joyce Polen. The sixteen and one-half (16 1/2) foot wide road was named after Ancil and Edna Jones who acquired the right to use the right-of-way after becoming partial owners of Oliver Bryer's farm. Jones Road is bordered by trees, fences, hills, and in some areas, a swamp. Its hilly terrain and contour make it dangerous and often impossible for two cars to occupy the road simultaneously.
In March of 1968, the Polens purchased real estate from David and Avis Beadnell. The deed which transferred that property contained the Jones Road right-of-way and described it as follows:
 "Also for the consideration Twenty-five Dollars ($25.00) received to our full satisfaction said Grantees to have the right of way and privilege to drive through the following tracts of land owned by the said Grantors, said right of way to be 16 1/2 feet wide throughout its length, said right of way to commence at the southwest corner of the farm formerly owned by the said Oliver Bryer and now owned by Ancil and Edna Jones, in Franklin Township in said County and State and running along the south line of West part S.W. 1/4, containing one hundred and one acres, more or less; said right of way is conveyed for a roadway for the use of the said grantees, their heirs and assigns forever.
 "Also along the south line of lands formerly owned by Dominic and Margaret Galiher (sic) containing forty acres of land more or less and described on tax list Range 4, Township 14, Section 36, except south east 1/4 (40) acres; said grantees to put up a fence along the full length of said roadway along the line of the one hundred and one acres and the forty acres of land above described its full length; that after said first fence needs repairs each party to make and keep in repair one-half of said fence; the said grantors to use about 40 rods of the west end of said roadway." (Emphasis added).
Dominic and Margaret Gallagher first granted this right of way to Oliver Bryer in October of 1915 over land which they owned and which the Ganses/Turnbulls now own. In July, 1959, Oliver Bryer granted the right of way to David and Avis Beadnell, who subsequently, transferred it to the Polens in March of 1968. Each deed conveyed the right of way using the language cited above. Additionally, the 1959 deed from Mamie Crouch to Ancil and Edna Jones granted them use of Jones Road as follows:
 "THIRD TRACT: Being a right-of-way for road purposes only as a way into and out from said lands herein conveyed, over and across the land of Dominac (sic) Gallagher in said Franklin Township, Columbiana County, Ohio, said right of way being sixteen and one-half (16-1/2) feet wide, said Grantee to build and keep in good repair one half of the fence on each side of said right of way being the same right of way conveyed by deed to Oliver Bryer by Dominac (sic) Gallagher and his wife Margaret Gallagher dated September 13th, 1915, and recorded in records of deeds in said Columbiana County, in Recorder's Office of said County, in deed book 385, Page 488, reference to which deed and record thereof is hereby made."
The use of Jones Road became an issue when the Ganses/Turnbulls installed a driveway from their home onto Jones Road. The driveway accesses the road beyond the first forty (40) rods (eastward from State Route 644) and has caused water runoff problems such as washing out gravel, rutting and standing water. Prior to installing the driveway, the Ganses/Turnbulls accessed their home by traveling the first (40) forty rods of Jones Road, turning north onto the Welshes' field and proceeding east onto their property. Aside from Jones Road, the Ganses/Turnbulls can access their property from Dobson Road, a township road which runs through the northern part of their property and is improved, open and passable for traffic.
In August, 1996, the Polens filed a complaint for quiet title, trespass damages and an injunction in the Columbiana Common Pleas Court against the Ganses/Turnbulls and John and Janice Welsh. In March, 1997, the Ganses/Turnbulls and the Welshes filed a motion for summary judgment. Subsequently, in May, 1997, the Polens filed a cross-motion for partial summary judgment on their complaint for quiet title. The trial court granted the Polens' request for an injunction and quieted their title in the right-of-way beyond the first forty (40) rods but denied their complaint for trespass damages. The Welshes declined to appeal. The Ganses/Turnbulls filed a notice to appeal the quiet title and injunction issues, and the Polens cross-appealed on damages.
Appellants/cross-appellees', the Ganses/Turnbulls', sole assignment of error on appeal alleges:
 "The trial court erred in finding an 'exclusive easement' for a one-acre land-locked parcel of property, based on the unambiguous language of plaintiffs' deed. [Record, Judgment Entry, June 19, 1997]"
The Ganses/Turnbulls argue that the language of the Polens' deed regarding the right-of-way is clear and unambiguous and does not convey to them an "exclusive easement." The Ganses/Turnbulls contend that the introduction of extrinsic evidence will demonstrate an intent for equal use of the right-of-way to owners of landlocked property. The Ganses/Turnbulls aver that the trial court improperly granted partial summary judgment to the Polens because issues of material fact were in dispute.
Civ.R. 56(C) states, in pertinent part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
As set forth by the Ohio Supreme Court in Welco Industries,Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346:
 "Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' * * * Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. * * * Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim."
The Ohio Supreme Court in Dresher v. Burt (1996), 75 Ohio St.3d 280, held that a moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support its claims.
The Ohio Supreme Court in Dresher, supra further held that once the moving party has met its initial burden the nonmoving party must then produce any evidence for which such party bears the burden of production at trial. In reviewing a trial court's decision to grant summary judgment, an appellate court must conduct a de novo review of the record. Renner v. DerinAcquisition Corp. (1996), 111 Ohio App.3d 326.
An easement is the right to use the land of another. SeeSmith v. Gilbraith (1991), 75 Ohio App.3d 428. More precisely:
 "An easement is an interest in land in the possession of another which
 "(a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists;
 "(b) entitles him to protection as against third persons from interference in such use or enjoyment;
 "(c) is not subject to the will of the possessor of the land;
 "(d) is not a normal incident of the possession of any land possessed by the owner of the interest; and
 "(e) is capable of creation by conveyance." Restatement of the Law, Property (1944), Section 450. See also, Smith, supra at 434.
An easement becomes exclusive when the grantor conveys to the grantee an unfettered right to use the land to the exclusion of others. Smith, supra. See also, Black's Law Dictionary (6 Ed. 1990) 510.
The construction of a deed is a matter of law. Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241. The primary purpose in construing the language of a deed is to ascertain the grantor's intent. Murray v. Lyon (1994), 95 Ohio App.3d 215. When the terms of the instrument are clear and unambiguous, a court may not derive meaning from the words other than that explicitly expressed. Alexander, supra. The court in Alexander stated:
 "* * * common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." Alexander, supra at 245-46.
If the language of a deed is unclear, ambiguous or indicates a special meaning, extrinsic evidence may be considered to ascertain the parties' intent. Sedlack v. City of Solon (1995),104 Ohio App.3d 170 (quoting Robinwood Assoc. HealthIndustries, Inc. (1988), 47 Ohio App.3d 156.). Furthermore, "every grant shall be construed, in case of doubt, most strongly against the grantor." Potter v. Burton, (1846),15 Ohio St. 196.
R.C. 5302.04 provides:
 "In a conveyance of real estate or any interest therein, all rights, easements, privileges, and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary is stated in the deed, and it is unnecessary to enumerate or mention them either generally or specifically."
In Henry v. Murfin (May 31, 1995), Summit App. No. 16530, unreported, the deed at issue stated:
 "The Grantors * * * convey unto the Grantees * * * a permanent and perpetual easement for driveway and yard purposes only, specifically excluding the right to erect any buildings, or other structures thereon, over and upon the [described property]."
The trial court held that "yard purposes" was considered a shared use between the parties because the deed did not include the word "exclusive" to limit the easement to benefit just one party. The Court of Appeals reversed, holding that R.C. 5302.04
presumes that a deed will contain words of limitation to limit the use of that conveyed if the grantor so intended. The appellate court explained:
 "Thus, if the grantors intended to retain a right of control over the use of the easement property 'for driveway and yard purpose,' it was incumbent upon them to expressly reserve the right in the deed. Conversely, it was not necessary for the grantors to mention that the rights conveyed were exclusive or that the right to landscape the easement area was included. In the absence of a clear expression of intent or other evidence of a contrary intent, it is presumed that the grantors conveyed the entire interest by their grant."
When construing an easement, a court may consider the conduct of the parties subsequent to the conveyance. Roebuck v.Columbia Gas Transmission Corp. (1977), 57 Ohio App.2d 217
(quoting 18A Ohio Jurisprudence 2d (1998) 498, Easements, Section 51). Particularly, the appellate court in Roebuck,supra stated:
 " '* * * evidence may be introduced to show the situation and condition of the easement and properties involved, the use made of it, * * *, and all other facts bearing upon the situation and relation of the parties, in order to determine what was granted by one party and received by the other, * * *.' " Roebuck, supra at 224.
The Restatement of the Law, Property (1944), Section 483 reemphasizes this point, suggesting:
 "* * * Thus, if the parties to a conveyance which created an easement have acted under the conveyance as though the easement had a particular extent, that fact is relevant in ascertaining its extent." Restatement of the Law, Property (1944), Section 483, Comment j.
The trial court did not err in finding that the 1968 deed conveyed to the Polens' an "exclusive easement" in Jones Road beyond that first forty (40) rods. Two clauses of the 1915 deed are relevant to our analysis. First, the deed states that "said right-of-way is conveyed for a roadway for the use of the saidgrantees, their heirs and assigns forever." Second, the deed states, "the said grantors to use about 40 rods of the west end of said roadway." The clear and unambiguous language of the original 1915 deed, and subsequently, that of the Polens' 1968 deed evidence the grantors' intent to convey an exclusive easement to run with the land.
Notwithstanding the nature of the first forty (40) rods, the land beyond the first forty (40) rods was conveyed for the exclusive use of the Polens. First, the grantors' reservation in the first forty (40) rods of the easement implies that they intended the balance of the easement to be exclusive to the grantees and their successors in interest. To interpret the deed otherwise would result in a meaningless reservation. Had the grantors intended for the easement beyond the first forty (40) rods to be non-exclusive, they would not have reserved a right to use the first forty (40) rods.
Second, any provision which is ambiguous or vague must be construed strictly against the grantor. Thus, even if the language in the 1915 and subsequent deeds was ambiguous or vague, the interpretation must favor the grantees. Applying this rule, it appears that the parties intended the easement beyond the first forty (40) rods to be exclusive to the grantees.
Third, extrinsic evidence supports the conclusion that the Polens' easement is exclusive. Appellants, Ruth and Leslie Turnbull testified that they used only the first forty (40) rods of the easement until 1996 when the Welshes disputed the Ganses/Turnbulls' right to use the Welshes' field to reach their property. Appellants agreed to cease traversing the Welshes' field. In doing so, they continued past the first forty (40) rods of the easement in order to reach their property directly. At this time, the Ganses/Turnbulls claimed a right to use the Polens' easement beyond the first forty (40) rods. This conduct supports the Polens' claim to an exclusive easement. Prior to their dispute with the Welshes, the Ganses/Turnbulls never claimed a right to travel over Jones Road beyond the first forty (40) rods. Instead, they turned onto the Welshes' field to purposely avoid encroaching the Polens' easement. In a letter to Janice Welsh, Laura Gans concedes the right to use only the first forty (40) rods of Jones Road. She states:
 "My reason for writing is to tell you that we won't be putting in a new road, as planned. * * *
 "* * * you stated that because your Father [Ancil Jones] owned the rights to his right-of-way from SR 644 to he and your Mothers (sic) home, it would be best for us to speak with him concerning transferring road privileges to us. * * * my Father visited with your folks and your Father agreed to provide whatever it took to resolve the situation, and at no cost. * * *.
 "My Father, in good faith, had a statement drawn up upon the advice of our attorney, who suggested that the signature of your Father onto the document, be notarized. At 9:30 P.M. of that same evening my Father received a phone call from your sister, Joyce Pollen. She yelled at my Father, called him a liar and accused him of going behind her back to 'trick your Father into signing something that he had no authority to sign.' She further stated that 'now they would never let us use the road.' She finished that it was she that 'had authority regarding your Father's business.' * * *.
 "* * *, your Father said that he was 'unable to sign any kind of agreement.' * * *
 "* * * And, on your Father's deed there is mention of referring to a specific deed book and page number in that book. If you read that document, you'll see that the Gallaghers made specific mention of an express right-of-way from SR 644 of 660 feet. If you measure that, you'll see that the 660 feet ends approximately where our road turns left across your property. * * *." (Letter from Laura Gans to Janice Welsh, June 1, 1994.) (Emphasis added).
Furthermore, Janice Welsh testified to the fact that the Polens had an exclusive easement. Her testimony, in pertinent part, stated:
 "Q: Can you read — why don't you read out loud for us what you've written here?
 "A: 'John and I want you to rescind your statement in the letter dated January 31st, 1996 where you express your legal opinion, total opposite of what we believe. We do not want Turnbulls or Gans — we do not want Turnbull, Gans going across our property at all, period. John and I want you to understand that we do not question the ownerships of the right of way. Fred and Joyce [the Polens] have the deed to the right of way, and my dad mom [the Joneses] have the use to the right of way, it is in there deed. Turnbulls Gans have nothing in their deed. Mrs John M. Welsh.' " (Janice Welsh, Depo. at 24.)
No genuine issue of material fact exists concerning the Ganses/Turnbulls nonuse of the easement beyond the first forty (40) rods, as the Ganses/Turnbulls have not produced any evidence to the contrary. Accordingly, the Ganses/Turnbulls have failed to carry their burden in this matter. The trial court correctly determined that there were no genuine issues of material fact and as a matter of law, the Polens have an exclusive easement in Jones Road beyond the first forty (40) rods.
Appellant's assignment of error is without merit.
Appellees/cross-appellants', the Polens, sole assignment of error on cross-appeal alleges:
 "The trial court improperly granted summary judgment in favor of appellants/cross-appellees on appellees/cross-appellants' trespass claim."
Appellees/cross-appellants stated in both their briefs and in oral arguments before this court that should this court affirm the trial court on the quiet title issue, they do not intend to further pursue their trespass claim. Based on those statements, we need not address this assignment of error, as we find it is moot.
The judgment of the trial court is affirmed.
Hon. Edward A. Cox, Hon. Gene Donofrio, Hon. Cheryl L. Waite, JUDGES.
Donofrio, P.J., concurs.
Waite, J., concurs.
APPROVED:
 ----------------------- EDWARD A. COX, JUDGE