OPINION
{¶ 1} Appellant appeals the decision of the Mansfield Municipal Court approving the magistrate's award of judgment to Appellee.
 {¶ 2} STATEMENT OF THE FACTS AND CASE
 {¶ 3} For purposes of this appeal, the facts as set forth in the pleadings and the exhibits presented at trial are as follows:
 {¶ 4} On September 9, 1994, Plaintiff-Appellee Gino Colace and Patricia Colace sold to Appellants Jeffery Wander and Carol Wander real estate located at 6074 Possum Run Road, Bellville, Richland County, Ohio. (Plaintiff's Ex. 1). Plaintiff-Appellee Colace retained ownership of adjoining land with a house, in which he resided, and a barn. Both properties were accessed by a common driveway, which included a bridge over a creek. Patricia Colace conveyed her interest in the real estate to Plaintiff-Appellee on April 7, 2004. (Pl. Ex. para 5).
{23} The deed granted and conveyed to Defendants-Appellants the use of the driveway for purposes of ingress and egress. (Answer p. 1, Pl. Ex. 1). The deed was silent as to the maintenance obligation for the driveway and bridge. Plaintiff-Appellee submitted a proposed joint driveway agreement to Defendants-Appellants at various times between 1995 to1999, but no agreement was ever reached by the parties. (Pl. Ex. 2, 3, 4, 5, 7, 8, 9).
 {¶ 6} From 1995 to 2000, the parties shared the expenses associated with the repair and maintenance of the bridge. (Answer p. 1, Pl. Ex. 6, 14) The condition of the bridge deteriorated into various states of disservice and disrepair. (Counterclaim p. 3,
Reply p. 1, Pl. Ex. 12, Def. Ex. A, B, C, D, E, F, G) In July 1998, Defendants-Appellants' truck broke through the bridge deck. (Pl. Ex. 10).
 {¶ 7} On March 5, 1999, Defendants-Appellants agreed to share costs on all necessary structural requirements. Defendants agreed to pay 50% of the costs. (Pl. Ex. 10). Prior to this agreement, Plaintiff-Appellee obtained an estimate from Crawford Construction in November, 1998, for four options for the replacement of the bridge, which ranged in price from $16,000 to $26,662. (Pl. Ex. 11). Defendants-appellants rejected Plaintiff-Appellee's original proposal for a covered bridge and further rejected the four replacement options, none of which included a covered bridge. (Pl. Ex. 10).
 {¶ 8} On February 16, 2001, Plaintiff-Appellee sent Defendants-Appellants a letter informing them that he had selected Menuez Brothers to replace the bridge. (Counterclaim p. 3, Reply p. 1, Pl. Ex. 17). The letter informed Defendants-Appellants that Menuez Brothers were filling in their work schedule with this job so time was of the essence. Plaintiff-Appellee included with this letter a proposal from Menuez Brothers to replace the bridge at a cost of $10,500. (Pl. Ex. 18). Defendants-Appellants rejected this proposal for the replacement of the bridge by letter dated February 27, 2001. (Pl. Ex. 19). Defendants-Appellants had previously discussed with Plaintiff-Appellee the use of Menuez Brothers for construction of the bridge in May, 2000, (Pl. Ex.19) and again on January 15, 2001, when Defendants-Appellants removed railing and bridge decking. (Pl. Ex. 33, 34). Defendants-Appellants subsequently installed new decking on the bridge even though they were aware of the scheduled replacement of the bridge. (Pl. Ex. 34, Def. Ex. D, E, F, G).
 {¶ 9} Plaintiff-Appellee informed Defendants-Appellants of the March 12, 2001, scheduled construction commencement date in a letter dated March 8, 2001. (Pl. Ex. 20). Defendants-Appellants responded by letter dated March 10, 2001, and denied any responsibility for the expenses. (Pl. Ex. 21). This letter was the first occasion when Defendants-Appellants informed Plaintiff-Appellee of the wedding plans for March 16 and 17, 2001.
 {¶ 10} Construction on the bridge started as scheduled on March 12, 2001. (Counterclaim p. 3-4., Reply p. 1-2, Pl. Ex. 24). The construction concluded on April 17, 2001. (Counterclaim p. 3-4, Reply p. 1-2). During this time, the bridge was unusable. (Counterclaim p. 3, Reply p. 1, Pl. Ex. 22 A-K, Def. Ex. H, I). Plaintiff-Appellee and Defendants-Appellants had access to their residences on foot by means of a footbridge running across the creek beside the old bridge and by vehicle by means of a ford through the creek. (Def. Ex. J, K, L, M, N, 0). Plaintiff-Appellee paid $10,500 to Menuez Brothers (Pl. Ex. 24) and an additional sum of $3,109.39 for other expenses related to the replacement of the bridge. (Pl. Ex. 25, 26, 27, 28, 29, 30, 31, 32).
 {¶ 11} On August 14, 2002, Plaintiff-Appellee Gino Colace filed his first complaint in the Municipal Court of Mansfield, Ohio, seeking contribution from Defendants-Appellants Jeff and Carol Wander for a bridge which he had built.
 {¶ 12} Defendants-Appellants Wander responded with a counterclaim seeking damages claimed to have been caused by having their sole means of ingress and egress to and from their residence removed by Plaintiff-Appellee.
 {¶ 13} On August 14, 2003, both the complaint and the counterclaim were subsequently dismissed by stipulation.
 {¶ 14} On September 18, 2003, Plaintiff re-filed his complaint, this time adding Columbia Natural Resources as a party defendant.
 {¶ 15} On or about November 5, 2003, Columbia Natural Resources filed an Answer and a Motion to dismiss.
 {¶ 16} On or about January 7, 2004, Plaintiff-Appellee sold his house to Vance Dewitt and Heather Dewitt and retained the land on which the barn is located. At the time of sale, Plaintiff-Appellee and the Dewitts entered into a joint driveway agreement. (Def. Cross-claim p. 1, Dewitt Reply p. 1-2 and Ex. A).
 {¶ 17} On or about March 15, 2004, Plaintiff filed a Motion to Amend Complaint and an Amended Complaint, naming Columbia Gas Transmission Corporation as a party defendant.
 {¶ 18} On or about April 2, 2004, Defendants-Appellants Wander filed their Answer and Cross-Claim related to Columbia Gas Transmission Corporation.
 {¶ 19} On April 8, 2004, Defendants-Appellants Wander filed their Answer to Amended Complaint and their Counterclaim against Plaintiff-Appellee. The Counterclaim asserted three-counts against Plaintiff-Appellee: (1) breach of warranties, covenants and obligations in the deed for denial of access to their property; (2) tortious, intentional and malicious interference with Defendants' wedding and Easter events; and (3) reimbursement for cost of repairs made to the bridge.
 {¶ 20} Plaintiff-Appellee filed his Reply to the Counterclaim and asserted affirmative defenses of estoppel and failure to mitigate damages.
 {¶ 21} On or about August 9, 2004, Defendants-Appellants Wander filed a motion to add new parties, asking Vance and Heather DeWitt to be joined as cross-claim defendants.
 {¶ 22} On November 24, 2004, trial commenced before the Magistrate.
 {¶ 23} By Judgment Entry (Consent Decree) filed December 28, 2004, the trial court memorialized the settlement of the claims between Plaintiff Gino Colace and Defendant Columbia Gas Transmission Corporation and dismissed Plaintiff's Complaint against Defendant Columbia Gas and Columbia Gas' counterclaim with prejudice.
 {¶ 24} The Magistrate's decision was filed on January 21, 2005. The Magistrate's recommendation granted Plaintiff-Appellee a judgment against Defendants-Appellants Wander for $5,041.94, plus interest at the rate of 5%. The Magistrate denied Defendants-Appellants' counterclaim.
 {¶ 25} Both Plaintiff-Appellee and Defendants-Appellants Wander filed objections to the Magistrate's decision.
 {¶ 26} On March 10, 2005, Defendants Wander filed a motion for new trial.
 {¶ 27} The court's docket states that on October 4, 2005, "Plaintiff was in today, had Q's about this case. He did get to speak w/ Judge."
 {¶ 28} By Judgment Entry dated December 6, 2006, the trial court denied objections filed by both parties and approved the Magistrate's decision.
 {¶ 29} On December 16, 2006, the trial court sua sponte filed a "Clarification Judgment Entry" journalizing the stipulation that was read into the record at trial dismissing the claims raised by or against the other parties.
 {¶ 30} On January 13, 2006, Appellant filed the instant appeal, raising the following Assignments of Error for review:
 ASSIGNMENTS OF ERROR {¶ 31} "I. THE TRIAL COURT ERRED BY AWARDING PLAINTIFF RELIEF UPON HIS COMPLAINT.
 {¶ 32} "II. THE TRIAL COURT ERRED BY FAILING TO AWARD DEFENDANTS' RELIEF UPON THEIR COUNTERCLAIM.
 {¶ 33} "III. THE TRIAL COURT FAILED TO CONSIDER ALL OF THE FACTS AND EVIDENCE PRESENTED AT TRIAL OR IMROPERLY [SIC] INTERPRETED SUCH FACTS AND EVIDENCE.
 {¶ 34} "IV. THE TRIAL COURT IMPROPERLY APPLIED CONTROLLING LAW.
 {¶ 35} "V. THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 36} "VI. THE TRIAL COURT ERRED IN DENYING DEFENDANTS WANDER'S MOTION FOR NEW TRIAL.
 {¶ 37} "VII. THE TRIAL JUDGE HAD INAPPROPRIATE EX PARTE COMMUNICATIONS WITH PLAINTIFF WHILE OBJECTIONS TO MAGISTRATE'S DECISION WERE PENDING."
 {¶ 38} Before addressing Appellant's assignments of error, we shall first address Appellee's argument regarding the timeliness of the instant appeal.
 {¶ 39} Upon review, we find that the December 6, 2005, Judgment Entry was not a final appealable order pursuant to App.R. 4 as said entry did not resolve all of the parties' claims in the case.
 {¶ 40} The December 20, 2002 judgment entry which dismissed the Dewitts was a final appealable order as such Entry resolved the remaining issues in the case.
 {¶ 41} We therefore find the instant appeal to be timely filed.
 {¶ 42} While Appellants did set out separate assignments of error on Page 3 of their brief, they did not set forth separate arguments as required by App.R. 16(A). We may disregard any assignment of error if the appellant fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." North Coast Cookies, Inc.v. Sweet Temptations, Inc. (1984) 16 Ohio App.3d 342, 476 N.E.2d 388.
 I., II., III., V. {¶ 43} In Assignments of Error I, II, III and V, Appellants argue that the trial court's decision was against the manifest weight of the evidence.
 {¶ 44} A review of the record below, however, reveals that appellants did not provide the trial court with a transcript of the proceedings when they filed their objections to the Magistrate's Decisions.
 {¶ 45} This Court has consistently held that absent a transcript, the trial court and this court must presume regularity in the proceedings on any finding of fact made. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 400 N.E.2d 384.
 {¶ 46} Civ.R. 53(E)(3) states as follows, in pertinent part:
 {¶ 47} "Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available * * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Civ.R. 53(E)(3)(c) (d).
 {¶ 48} In accordance with Civ.R. 53, a party cannot challenge the factual findings contained within a magistrate's decision on appeal unless such party submits the required transcript or affidavit to the trial court. Thus, to the extent that appellant challenges any findings of fact, appellant is precluded from arguing any factual determinations on appeal, and has waived any claim that the trial court erred in adopting the magistrate's findings.
 {¶ 49} As appellants failed to provide a transcript as required by Civ.R. 53(E)(3)(b), they cannot now challenge the trial court's adoption of any of the magistrate's findings of fact. While appellants provided a transcript of the hearing before the magistrate with the record on appeal to this court, this court cannot consider that transcript.State ex rel. Duncan v. Chippewa Twp. Trustees, (1995),73 Ohio St.3d 728.
 {¶ 50} The issues raised in these assignments of error cannot be resolved without reference to the transcript and since appellant failed to provide a transcript of the proceedings held before the Magistrate with its objections in the trial court, these assignments of error are precluded.
 {¶ 51} Appellants' Assignments of Error I, II, III and V are therefore overruled.
 IV. {¶ 52} In their fourth assignment of error, Appellants argue that the trial court improperly applied controlling law. We disagree.
 {¶ 53} Specifically, Appellants maintain that the trial court improperly applied the law of estoppel and estoppel by deed, arguing that because the deed was silent as to maintenance, Appellee should be estopped from asserting a contrary position.
 {¶ 54} The trial court found that the case law regarding easements was controlling.
 {¶ 55} The doctrine of "merger by deed" holds that whenever a deed is delivered and accepted without qualification pursuant to a sales contract for real property, the contract becomes merged into the deed and no cause of action upon said prior agreement exists. The purchaser is limited to the express covenants only. 37 Robinwood Assoc. v. HealthIndustries, Inc. (1988), 47 Ohio App.3d 156, 157-158, 547 N.E.2d 1019.
 {¶ 56} As this Court stated in Suermondt v. Lowe (2006),165 Ohio App.3d 427, 432:
 {¶ 57} "In explaining the underpinnings of the doctrine of merger by deed, a recent case quoted the author of a prominent treatise who noted the following: "`In reality, this doctrine is merely an application of the contract doctrine of integration. Under this doctrine, all prior documents are considered to be integrated into the final contract, and only the provisions contained in the final contract are part of the agreement. This doctrine is the combined result of the parol evidence rule and the rule of interpretation which seeks to determine the intentions of the parties. Thus, if it can be shown that the parties actually intended that the provisions of a prior agreement continue in force, then the provisions do so continue. Similarly, the merger doctrine should only be applied as a canon of construction that attempts to arrive at the true intention of the parties to a deed.'" Newman v.Group One, Highland App. No. 04CA18, 2005-Ohio-1582, 2005 WL 737579
(quoting 14 Powell on Real Property (1995) 81A-136, Section 81A.07(1)(d))."
 {¶ 58} In Smith v. Gilbraith (1991), 75 Ohio App.3d 428,599 N.E.2d 798, the Eleventh District Court of Appeals stated:
 {¶ 59} "The Restatement of the Law, Property (1944), Section 450, has defined an 'easement' as an interest in the land in the possession of another which: (a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists; (b) entitles him to protection as against third persons from interference in such use or enjoyment; (c) is not subject to the will of the possessor of the land; (d) is not a normal incident of the possession of any land possessed by the owner of the interest; and (e) is capable of creation by conveyance. "
 {¶ 60} Stated differently, an easement is an interest in the land of another, carrying only a right to use the land. The easement may be perpetual and exclusive, yet it differs from a fee in that the holder of the easement: (1) has no estate in land; (2) can make use of the land only for a limited purpose; (3) cannot control the freehold itself; and (4) once the holder of the easement abandons his prescribed use, the property reverts to the feeholders. See, generally, Thompson, Commentaries on the Modern Law of Real Property (1980), Section 319." Id. at 434, 599 N.E.2d 798.
 {¶ 61} As stated above, the easement at issue in the instant action does not address the issue of which party bears the responsibility for maintenance and repair. Appellants argue, because the deed is silent as to this issue, the grant must be construed against Appellee as the grantor of the easement.
 {¶ 62} The owner of an easement [the dominant estate or Appellants herein] may use the easement for the purposes for which it is granted and may make repairs to the easement in order to ensure the enjoyment of the easement. In fact, unless the owner of the servient estate [Appellee] is bound to make repairs, "[t]he burden devolves upon the owner of the dominant estate, of making whatever repairs are necessary for his use [of the easement]." National Exchange Bank v.Cunningham (1889), 46 Ohio St. 575, 589, 22 N.E. 924. See, also, 36 Ohio Jurisprudence 3d (1982) 464, Easements and Licenses, Section 60.
 {¶ 63} The dominant estate is also required to make repairs if "necessary to prevent the enjoyment of the right [from] becoming an annoyance and nuisance to the owner of the servient tenement, unless the grantor himself has expressly undertaken the performance of that duty.National Exchange Bank, supra (Citation omitted).
 {¶ 64} In the case sub judice, the trial court explicitly found the bridge repairs by Appellee were necessary:
 {¶ 65} "21. The Court finds that, based upon review of the evidence, the bridge needed some serious, long-term repairs and the Wanders should pay their fair share of the reasonable and necessary costs for the bridge replacement as they did receive the benefit." (Magistrate's Decision, P. 4).
 {¶ 66} Furthermore, the Magistrate found that the specific bridge built, as opposed to a reasonable and serviceable one, increased the value of Appellants' property. Id.
 {¶ 67} Because the bridge was used jointly between the parties, we find the trial court properly determined the relative use of each party and apportioned the expenses incurred in maintaining and repairing the easement accordingly.
 {¶ 68} Appellants fifth assignment of error is overruled.
 VI. {¶ 69} In their sixth assignment of error, Appellants argue that the trial court erred in denying their motion for a new trial. We disagree.
 {¶ 70} More specifically, Appellants argue that Appellee's attorney's review of the Magistrate's notes gave Appellee an unfair advantage in preparing his objections and that such "inequity and unfair treatment" required "a new trial on the merits." (Appellants' brief at 18).
 {¶ 71} The trial court never ruled upon Appellants' Motion for a New Trial, however, a motion not expressly decided by a trial court when the case is concluded is presumed to have been overruled. State ex rel. v.Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198.
 {¶ 72} A trial court's decision to grant a new trial pursuant to Civ.R. 59 lies within the trial court's sound discretion. Rohde v.Farmer (1970), 23 Ohio St.2d 82, State v. Hawkins (1993),66 Ohio St.3d 339, 350, 612 N.E.2d 1227. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983) 5 Ohio St.3d 217.
 {¶ 73} Pursuant to Civil Rule 59, the grounds for a new trial are:
 {¶ 74} "(A) Grounds
 {¶ 75} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 76} "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 {¶ 77} "(2) Misconduct of the jury or prevailing party;
 {¶ 78} "(3) Accident or surprise which ordinary prudence could not have guarded against;
 {¶ 79} "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 {¶ 80} "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 {¶ 81} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 82} "(7) The judgment is contrary to law;
 {¶ 83} "(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;
 {¶ 84} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;
 {¶ 85} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.
 {¶ 86} "When a new trial is granted, the court shall specify in writing the grounds upon which such new trial is granted.
 {¶ 87} "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment."
 {¶ 88} In the instant case, although it is not stated anywhere in the motion or their brief, it appears that Appellants are arguing their motion under subsection A(1).
 {¶ 89} Upon review, we find that there is no evidence in the record that such communication denied Appellants a fair trial. While the trial court did not sustain Appellants' objections, it did not sustain Appellee's objections either.
 {¶ 90} Appellants' sixth assignment of error is overruled.
 VII. {¶ 91} In their seventh and final assignment of error, Appellants argue that the trial court had inappropriate ex parte communication with Appellee.
 {¶ 92} Other than the docket entry that states that Appellee called the court with questions and that he did speak with the judge, we have no further information concerning such conversation.
 {¶ 93} Furthermore, nowhere in Appellants' argument as contained in their brief, do Appellants even address and/or support this assignment of error.
 {¶ 94} Upon review of the record, we further find that Appellant did not file an affidavit of disqualification asking for the judge in this case to be recused, as statutorily required. Const. Art. 4, § 5(C), R.C. § 2701.031.
 {¶ 95} As stated above, we find nothing in the record to call the trial court's impartiality into question.
 {¶ 96} Appellants' seventh assignment of error is overruled.
 {¶ 97} For the reasons stated in the foregoing opinion, the judgment of the Mansfield Municipal Court is hereby affirmed.
Boggins, J. Hoffman, P. J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Mansfield Municipal Court, Richland County, Ohio, is affirmed. Costs to appellant.