[Cite as *Miller Lakes Community Servs. Assn., Inc. v Schmitt*, 2016-Ohio-339.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

MILLER LAKES COMMUNITY
SERVICES ASSOCIATION, INC.

     Appellant

     v.

WOLFGANG R. SCHMITT, et al.

     Appellees

C.A. No.     15AP0010


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     08-CV-0521

DECISION AND JOURNAL ENTRY

Dated: February 1, 2016

HENSAL, Presiding Judge.

{¶1}    Plaintiff-Appellant, Miller Lakes Community Services Association, Inc. ("Miller Lakes"), appeals from the judgment of the Wayne County Court of Common Pleas. This Court affirms.

I.

{¶2}    In 1988, Arthur Miller Park Corporation ("AMPC") incorporated Miller Lakes for the purpose of creating a residential community/homeowners association on certain real property that AMPC owned in Wayne County. AMPC conveyed various parcels of property to Miller Lakes over the years and maintained majority control over the association as its only Class B member. Class A membership consisted of lot owners who held record title to property that was subject to the Declaration of Covenants, Conditions and Restrictions ("the Declaration") that AMPC filed to create Miller Lakes. Over the years, AMPC filed several amendments to the Declaration and conveyed additional parcels of property to Miller Lakes. The last of those

conveyances occurred on June 3, 1999. On that date, Miller Lakes took title to the common areas in the residential community and assumed responsibility for the homeowners association.[1] By virtue of the Declaration and subsequent amendments thereto, Miller Lakes is obligated to maintain and repair the common areas of Miller Lakes, including its private roads and utility lines.

{¶3} Miller Lake Road is one of Miller Lakes' common areas and a focal point of this appeal. The private road runs through the residential community and provides access to Burbank Road. Defendant-Appellees, Richard and Norma Cooper, both individually and as trustees of the Cooper Family Trust ("the Coopers"), and David and Becky Wigham ("the Wighams"), live to the north of Miller Lake Road. Defendant-Appellees, Wolfgang and Toni Schmitt ("the Schmitts"), live to the south of Miller Lake Road. Although the Coopers, the Wighams, and the Schmitts (collectively "the Defendants") live in the vicinity of Miller Lakes and use Miller Lake Road, they are not members of Miller Lakes. Consequently, they do not pay the dues it charges to its members.

{¶4} Each of the Defendants' property can be traced back to AMPC. In 1975, AMPC conveyed the property that now belongs to the Coopers to Walter Saunders. The following year, Mr. Saunders and his wife deeded the property to Real Estate Showcase, Inc., who, in turn, deeded it to the Coopers in 1977. The Coopers later placed their property in trust, but have maintained a residence there since 1977. There is no dispute that their deed contains an

---

[1] On appeal, Miller Lakes maintains that AMPC did not terminate its Class B membership and cede control of the homeowners association to Miller Lakes until October 10, 2002. Yet, it fails to cite any portion of the record as support for that fact. In its trial brief, Miller Lakes wrote that it "[took] over the maintenance and repair obligations from AMPC * * * sometime after 1999." Moreover, the trial court specifically found that Miller Lakes took control of the homeowners association in 1999. Miller Lakes has not challenged that finding on appeal. Thus, we rely upon the June 3, 1999 date as the date that Miller Lakes took control of the homeowners association.

easement that allows them to use Miller Lake Road for purposes of ingress and egress. There also is no dispute that their deed does not expressly impose any reciprocal obligation upon them in exchange for the easement. All of the preceding deeds for the Coopers' property contained the same easement and were likewise silent regarding any reciprocal obligation.

{¶5} In 1960, 1965, and 1973, respectively, AMPC conveyed the three parcels that the Wighams currently own to Barbara Miller (a.k.a. Barbara Hudson and Barbara McClure). Ms. Miller held title to the three parcels until 1984 when she conveyed them to Helen Jacobs. Then, in 1998, Ms. Jacobs and her husband conveyed the three parcels to the Wighams. There is no dispute that, with respect to two of the three parcels, the Wighams' deed contains an easement over Miller Lake Road for purposes of ingress and egress. Further, there is no dispute that their deed does not expressly impose any reciprocal obligation upon them in exchange for the easement. All of the preceding deeds for their property contained the same easement and were likewise silent regarding any reciprocal obligation.

{¶6} In 1990, AMPC conveyed the first of six parcels to the Schmitts. The 1990 deed granted the Schmitts an easement from Burbank Road over Miller Lake Road and the Trees, a private roadway that looped south from Miller Lake Road to the Schmitts' property. The 1990 deed provided that, in consideration for the easement, the Schmitts agreed

> to pay one-fourth (1/4) of the cost of maintaining that portion of Miller Lake Road and The Trees over which [the Schmitts] have an easement, including but not limited to road surfacing and other maintenance, and snow removal, and to mow and trim both sides of that portion of Miller Lake Road over which [the Schmitts] have an easement, at [the Schmitts'] sole expense.

There is no dispute that the Schmitts ultimately purchased all of the property over which the Trees loops such that the entirety of the Trees came into their possession. Specifically, they purchased five parcels from AMPC in 1991, 1992, 1993, 1994, and 1995, respectively. The

Schmitts took title to each of the five parcels "subject to restrictions, covenants, conditions, limitations, easements, rights of way, and reservations existing of record * * *."

{¶7} For many years, the Wighams and the Schmitts maintained portions of the common area along Miller Lake Road.[2] According to the Defendants, the Wighams and the Schmitts did so of their own accord and neither AMPC, nor Miller Lakes, ever charged the Defendants or their predecessors in title any fees related to the maintenance or repair of the property that AMPC or Miller Lakes owned. In 2006, however, Miller Lakes began asking the Defendants to share in various expenses related to its property, including the expense of snow removal, road repair, and utility line maintenance and/or repair. Miller Lakes attempted to invoice the Defendants in 2007 and 2008, but they refused to share in the expenses because they were not members of the association and, previously, they had never been obligated to pay for such expenses. Once it became clear that the two sides were at an impasse, Miller Lakes filed suit.

{¶8} Miller Lakes brought suit against the Defendants for declaratory relief, unjust enrichment, and quantum meruit. Additionally, its complaint contained three specific damage counts related to the invoices that it had billed each of the Defendants. Miller Lakes sought a declaration that: (1) the Defendants acquired an easement across Miller Lake Road by virtue of their respective deeds; (2) the Schmitts also acquired an express maintenance/repair obligation for the easement property; (3) the Defendants regularly enjoyed certain benefits, including access

---

[2] Both the Wighams and the Schmitts own property that directly abuts Miller Lake Road. The Coopers live to the north of the road, but access the road by virtue of another easement that they have across a neighboring property that lies to the south of their property. As such, their property does not abut Miller Lake Road.

to Miller Lake Road and to water, sewer,[3] and utility lines privately owned by Miller Lakes; (4) there existed an ongoing need to maintain, repair, and/or replace Miller Lake Road and the water, sewer, and utility lines; (5) Miller Lakes was required to meet that need; and (6) the Defendants were required to share proportionately in all the maintenance, repair, and replacement expenses related to the benefits they enjoyed. In its unjust enrichment and quantum meruit counts, Miller Lakes sought damages for all the benefits that the Defendants had routinely enjoyed at its expense.

{¶9} The Coopers answered the complaint, and the Schmitts and the Wighams both answered and filed counterclaims against Miller Lakes. Relevant to this appeal, the Schmitts set forth claims for breach of contract, quasi-contract/unjust enrichment/quantum meruit, and declaratory relief. Meanwhile, the Wighams set forth claims for unjust enrichment/quantum meruit and declaratory relief. The Schmitts' breach of contract claim sought damages based on Miller Lakes' failure to maintain the Trees and the portion of Miller Lake Road over which the Schmitts had an easement. Their quasi-contract/unjust enrichment/quantum meruit claim sought damages for the maintenance and repair work they had done to "the drainage ditch and pipe and other areas that run along Miller Lake Road" to the benefit of and with the knowledge of Miller Lakes. Similarly, the Wighams' claim for unjust enrichment/quantum meruit sought damages for the "benefits and services" that the Wighams had provided Miller Lakes over the years "in the form of mowing, fertilizing, landscaping, tree trimming, leaf removal and other benefits which improved real property owned by Miller Lakes." In their respective counts for declaratory

---

[3] It is undisputed that, while the Coopers and the Wighams connect to the private sewer line owned by Miller Lakes, the Schmitts do not.

relief, the Schmitts and the Wighams asked the court to declare that: (1) their respective easements were silent on the issue of maintenance fees and expenses; (2) Miller Lakes or its predecessors had represented that the Schmitts and the Wighams would not be responsible for such fees and expenses unless they joined the homeowners association; (3) they had declined to join the association; (4) Miller Lakes was responsible for maintaining the easement property, including, for the Schmitts only, a drainage ditch and pipe; and (5) the benefits that they conferred upon Miller Lakes by virtue of their own maintenance and/or repair exceeded any benefits that Miller Lakes had allegedly conferred upon them.

{¶10} Following discovery, Miller Lakes sought summary judgment against: (1) the Defendants on its claims for declaratory judgment, unjust enrichment, and quantum meruit; (2) the Schmitts on all of their counterclaims; and (3) the Wighams on their counterclaim for declaratory judgment. Each of the Defendants then moved for summary judgment against Miller Lakes on all of its claims against them. Additionally, the Wighams sought summary judgment against Miller Lakes on their counterclaim for declaratory judgment.

{¶11} The trial court sought to resolve the majority of the summary judgment claims by way of journal entries dated November 19, 2009, September 23, 2011, and September 13, 2013. One or more of the parties attempted to appeal from each entry, but this Court dismissed all three appeals for lack of final, appealable orders. *See Miller Lakes Community Servs. Assn., Inc. v. Schmitt*, 9th Dist. Wayne No. 09CA0076, 2011-Ohio-1295; *Miller Lakes Community Servs. Assn., Inc. v. Schmitt*, 9th Dist. Wayne No. 11CA0053, 2012-Ohio-5116; and *Miller Lakes Community Servs. Assn., Inc. v. Schmitt*, 9th Dist. Wayne No. 13CA0045, 2014-Ohio-4748. Following this Court's last remand, the trial court issued a fourth journal entry.

{¶12} The trial court determined that the Defendants all acquired an easement across a portion of Miller Lake Road when they took title to their respective properties. The court found that, pursuant to the Declaration and the amendments thereto, Miller Lakes bore responsibility for maintaining and repairing its common areas. The court noted that Miller Lakes had performed maintenance and repairs to its common areas, including Miller Lake Road, over the years, but, until 2006, had never sought to charge the Defendants for a portion of those expenses. Meanwhile, the Defendants historically had maintained certain areas surrounding Miller Lake Road at their own expense and had never sought to charge Miller Lakes for their efforts.

{¶13} The court determined that the Wighams' and the Coopers' deeds were silent with respect to any obligation(s) arising as a result of their respective easements. Accordingly, it looked to the parties' longstanding course of conduct to interpret their deeds. The court concluded that the Wighams, the Coopers, and Miller Lakes would each continue to maintain and/or repair the areas that they had in the past at their own cost, consistent with the longstanding, unspoken arrangement that existed between them prior to 2006. Because the Wighams, the Coopers, and Miller Lakes had performed only the maintenance or repairs that they were obligated to perform, the court also concluded that none of them had been unjustly enriched. Accordingly, the court (1) dismissed all of their motions for judgment on their unjust enrichment, quantum meruit, and damage claims as moot; and (2) entered summary judgment in favor of the Coopers and the Wighams on Miller Lakes' claim for declaratory judgment.

{¶14} As to the Schmitts, the court acknowledged that their deed expressly obligated them to share in certain maintenance costs for Miller Lake Road and the Trees. Nevertheless, the court found that the terms of that maintenance were unclear because the deed language did not set out "the specific rights and obligations of each of the parties." To ascertain the intent of the

parties at the time they entered into their agreement, the court examined their conduct and their course of performance. The court noted that the Schmitts had never actually been charged for any road maintenance or repair but that, much like the Wighams, they had routinely maintained the easement property, including a nearby drainage pipe and the Trees, at their own expense. Consequently, the court concluded that the Schmitts and Miller Lakes would each continue to maintain and/or repair the areas that they had in the past at their own cost, consistent with their past course of conduct. Because the Schmitts and Miller Lakes had performed only the maintenance or repairs that they were obligated to perform, the court also concluded that neither of them had been unjustly enriched. Accordingly, it (1) dismissed all of their motions for judgment on their unjust enrichment, quantum meruit, and damage claims as moot; and (2) entered summary judgment in favor of the Schmitts on Miller Lakes' claim for declaratory judgment.

**{¶15}** Miller Lakes now appeals from the court's judgment and raises seven assignments of error for our review. For ease of analysis, we consolidate several of the assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ENTERING SUMMARY JUDGMENT IN FAVOR OF [THE SCHMITTS] ON THEIR CROSS-MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS SET FORTH IN THE SECOND AMENDED COMPLAINT OF [MILLER LAKES].

**{¶16}** In its first assignment of error, Miller Lakes argues that the trial court erred when it entered summary judgment in favor of the Schmitts on Miller Lakes' claims for declaratory judgment, unjust enrichment, quantum meruit, and specific damages. We disagree.

**{¶17}** Under Civil Rule 56(C), summary judgment is appropriate if:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶18} "When an easement is set forth in a written agreement, it is subject to the rules of contract law." *Zagrans v. Elek*, 9th Dist. Lorain No. 08CA009472, 2009-Ohio-2942, ¶ 9. "As with any written agreement, the primary purpose in construing an easement is to ascertain the parties' intent." *Murray v. Lyon*, 95 Ohio App.3d 215, 219 (9th Dist.1994). If a written easement is unambiguous, courts generally will interpret the easement according to its plain language. *Zagrans* at ¶ 9. *Accord Desantis v. Lenoci*, 9th Dist. Lorain No. 04CA008621, 2005-Ohio-4661, ¶ 10 ("Courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement."). However, "[p]arties may implicitly modify an agreement by their actions. A continued, different, course of performance between parties manifests a modification of the original agreement." (Internal quotations and citations omitted.) *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 39. *See also Harless v. Sprague*, 9th Dist. Summit No. 23546, 2007-Ohio-3236, ¶ 17, quoting *Lewis & Michael Moving and Storage, Inc. v. Stofcheck Ambulance Serv., Inc.*, 10th Dist. Franklin No.

05AP-662, 2006-Ohio-3810, ¶ 19 ("'[W]aiver by estoppel' exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it.'") (Alterations sic.)

{¶19}  There is no dispute that, in general, Miller Lakes is obligated to maintain and repair its common areas.  The Declaration for Miller Lakes, as amended in 1989 ("the Amended Declaration"), provides, in relevant part, that Miller Lakes

> shall maintain and keep in good repair the Common Area, which maintenance shall be deemed to include, but shall not be limited to, maintenance, repair, and replacement * * * of all lakes and improvements located thereon, trees, shrubs, grass, fences, streets, roads, drives, parking areas, walkways, bicycle paths, and other landscaping and improvements situated upon the Common Area. Maintenance of the Common Area shall specifically include (a) keeping the streets, roads, drives, and parking areas within the Common Area free from snow and ice, (b) keeping the area free from trash, debris, and nuisance, (c) keeping grass areas mowed and trimmed, and maintaining generally all landscaping, and (d) maintaining and repairing such utility lines, pipes, wires, conduits, and systems which are part of the Common Area.

It is undisputed that all of the property at issue in Miller Lakes' complaint falls within its common areas.

{¶20}  As previously set forth, the Schmitts first purchased property from AMPC in 1990 and their deed for that parcel contained both an easement and a payment and maintenance obligation for the easement property.  Their 1990 deed provides, in relevant part, that

> [i]n consideration for the grant of easement [over Miller Lake Road and the Trees], [the Schmitts] covenant and agree with [AMPC] to pay one-fourth (1/4) of the cost of maintaining that portion of Miller Lake Road and The Trees over which [they] have an easement, including but not limited to road surfacing and other maintenance, and snow removal, and to mow and trim both sides of that portion of Miller Lake Road over which [they] have an easement, at [their] sole expense.

Thus, despite Miller Lakes' general obligation to maintain and repair its common areas, the Schmitts originally agreed to share in at least a portion of that obligation for their individual easement property.

{¶21} In moving for summary judgment, the Schmitts included the affidavit of Toni Schmitt. Ms. Schmitt averred that, between 1990 and 2007, she and her husband never received a bill related to the repair or maintenance of their easement property. She further averred that, during that same time frame, she and her husband (1) routinely mowed and landscaped the south side of that portion of Miller Lake Road on which they had their easement, (2) cleared debris from the area and the nearby drain pipe, and (3) paved the intersection of the Trees and Miller Lake Road at their own cost. She described their arrangement with Miller Lakes, and previously with AMPC, as a "*quid pro quo* agreement." Ms. Schmitt stated that the payment obligation that she and her husband incurred in their deed was obsolete because (1) the parties had abided by their quid pro quo agreement instead of the deed language for over 17 years, and (2) a sizeable increase in the amount of traffic on the road constituted a change in circumstances. According to Ms. Schmitt, there were only four property owners who used Miller Lake Road at the time the Schmitts acquired their easement, but, currently, there were 28 owners who used the road. She also stated that she and her husband no longer needed an easement to access the Trees because they had acquired the Trees through subsequent land purchases.

{¶22} As additional support for their motion for summary judgment, the Schmitts relied upon an affidavit from David Wigham, an affidavit from the Coopers, and a letter from David Briggs, the president of Miller Lakes, to the Wighams. In their respective affidavits, both Mr. Wigham and the Coopers attested that, since owning their properties, they had never been asked to share in maintenance costs for Miller Lake Road or any of Miller Lakes' utility lines. They

specified that Miller Lakes maintained Miller Lake Road at its own cost until 2006. Mr. Wigham stated that, in September 2006, he received a letter from the president of Miller Lakes, asking the Wighams to start contributing to certain maintenance and repair expenses. In the letter, Mr. Briggs wrote:

> To date, [Miller Lakes] has paid all of the expenses for maintaining the roads and keeping the snow cleared in the winter, not asking those property owners who do not belong to the association to pay their fair share of these expenses. With the chipping and sealing of the roads two years ago and the recent expenses that we have had clearing the roots from the sewer line that you use, we are asking for your participation in and sharing of those expenses.

The Schmitts pointed to the foregoing affidavits and letter as evidence that, prior to 2006, they had never been charged for maintenance or repair expenses to the common areas of Miller Lakes because the association had always paid for those expenses itself.

{¶23} In defending against the Schmitts' motion for summary judgment and arguing in support of its own motion, Miller Lakes primarily relied upon the easement language contained within the Schmitts' deed from 1990. It also introduced affidavits from Mr. Briggs, the president of Miller Lakes, and William Ross, its general counsel. Mr. Briggs averred that Miller Lakes consists of common areas and 24 properties whose owners pay dues to the association for the maintenance and repair of the common areas. Likewise, Mr. Ross averred that Miller Lakes consists of 24 properties, all of which are part of the association and subject to the Amended Declaration. He further stated that four nearby properties, three of which belong to the Defendants, do not belong to the association, but use a portion of Miller Lake Road and the association's private utilities. He conceded, however, that those four properties "are not under the jurisdiction of [Miller Lakes] and are not expressly subject to the Amended Declaration of Covenants, Conditions and Restrictions for Miller Lakes * * *."

{¶24} In addition to the foregoing materials, Miller Lakes also relied upon copies of an Amended Easement Agreement, signed by Toni Schmitt and David Briggs, and a check from Ms. Schmitt. The Amended Easement Agreement, dated July 8, 2009, purports to be an updated agreement between the Schmitts and Miller Lakes, regarding the scope of the Schmitts' easement and their reciprocal payment and maintenance obligation. The check, dated March 16, 2009, purports to be a payment satisfying the Schmitts' past due invoices from Miller Lakes through 2008. Miller Lakes argued that both documents were evidence that the Schmitts "agree[d] with all of the allegations in [its] Complaint." Even so, it did not introduce any additional evidence, such as an affidavit or deposition testimony, that might provide context for either document.

{¶25} In her affidavit, Ms. Schmitt specifically responded to the Amended Easement Agreement and check that Miller Lakes introduced. She averred that she sent Miller Lakes a check for past due invoices as part of "[t]he terms and conditions of the settlement [she] thought [she] had reached with [Miller Lakes] * * *." She further stated that the settlement was not concluded because its terms and conditions "were either inaccurately stated or disavowed." According to Ms. Schmitt, her attorney had requested that Miller Lakes return the check that she wrote, but, to date, Miller Lakes still had not done so. Miller Lakes did not respond to Ms. Schmitt's assertion that the Amended Easement Agreement and check were part of a failed settlement.

{¶26} The trial court determined that the Schmitts' 1990 deed contained an express payment and maintenance obligation. The court also determined, however, that it was necessary to interpret the parties' intent with regard to the obligation because the deed language was not clear "as to the specific rights and obligations of each of the parties." Specifically, the court found that the deed expressly required the Schmitts to share in the cost of "road services and

other maintenance" for Miller Lake Road, but did not specify what that phrase entailed. Because the deed language was unclear and because, through their course of performance, parties also may implicitly modify a written agreement, the court examined the parties' conduct over the years. Based on their course of performance, the court found that Miller Lakes was responsible for the maintenance and repair of Miller Lake Road and its drainage ditch. Meanwhile, it found that the Schmitts were responsible for continuing to maintain the easement property surrounding Miller Lake Road and the nearby drainage pipe. The court declared that both Miller Lakes and the Schmitts were entitled to the benefits that each received from the other's maintenance or repair obligations without payment. Consequently, it entered judgment in favor of the Schmitts on Miller Lakes' claim for declaratory judgment and found the parties' claims for quasi-contract, unjust enrichment, and quantum meruit to be moot.

{¶27} Miller Lakes argues that the trial court erred by entering judgment in favor of the Schmitts because their deed language is unambiguous and expressly requires them (1) to pay one-fourth the cost of maintaining and repairing that portion of Miller Lake Road on which they have an easement, and (2) to mow and trim the sides of the road at their own expense. According to Miller Lakes, there was no reason for the trial court to consider evidence beyond the four corners of the deed because "[t]he road services and other maintenance are addressed in the clear and unambiguous language of [the] easement." Miller Lakes argues that the Schmitts never asked for their payment obligation to be extinguished and the Amended Declaration for Miller Lakes specifically provides that any failure on its part to collect payments does not constitute a waiver or release of its right to collect those payments. Additionally, it argues that the Amended Easement Agreement and check signed by Ms. Schmitt create a genuine issue of

material fact with respect to whether the Schmitts made payments on their obligation to Miller Lakes.

{¶28} Initially, we note that the Schmitts' deed does not require them to pay for "road *services* and other maintenance" on the easement property. (Emphasis added.) Their deed actually states that the Schmitts will make maintenance payments related to "road *surfacing* and other maintenance." (Emphasis added.) Miller Lakes repeatedly misquoted the deed language in the court below and, despite the Defendants having repeatedly pointed out the error, has continued to misquote the deed on appeal. Unfortunately, the trial court reproduced the error and cited the misquoted language as a source of ambiguity in the deed. It based its decision in favor of the Schmitts on (1) the ambiguity, and (2) the ability of parties to modify a written agreement through a different course of performance. We need not examine the court's ambiguity determination because the deed does not contain the language that the court found ambiguous. Further, the portion of the deed that the court found ambiguous only encompasses one of the Schmitts' obligations. The deed also unambiguously requires them "to mow and trim both sides of [the easement property], at [their] sole expense." For purposes of our analysis, we accept that the deed is unambiguous and only consider the parties' course of performance.

{¶29} The Schmitts set forth evidence that, despite the fact that their deed contained a payment obligation for the maintenance of their easement across Miller Lake Road, they went more than 16 years without making any such payment. The president of Miller Lakes acknowledged as much in his September 2006 letter to the Wighams, in which he indicated that, for the first time, Miller Lakes was asking owners who did not belong to the association to share in its expenses. Instead of relying on the language in the Schmitts' deed, the Schmitts and AMPC/Miller Lakes performed various maintenance tasks and repairs themselves and, for more

than 16 years, neither party sought payment from the other. Thus, the Schmitts set forth evidence that, over a lengthy period of time, they and AMPC/Miller Lakes adopted a course of performance that differed from the one envisioned in the Schmitts' deed.

{¶30} As previously noted, "[p]arties may implicitly modify an agreement by their actions. A continued, different, course of performance between parties manifests a modification of the original agreement." (Internal quotations and citations omitted.) *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, at ¶ 39. Although the Schmitts originally agreed to the obligations outlined in their deed, they set forth evidence that they and AMPC/Miller Lakes implicitly modified their agreement through a different course of performance. *See id.* As such, they satisfied their initial *Dresher* burden, and the burden shifted to Miller Lakes to demonstrate the existence of a genuine issue of material fact for trial. *See Dresher*, 75 Ohio St.3d at 293, quoting Civ.R. 56(E).

{¶31} Miller Lakes argues that its failure to collect payment from the Schmitts over the years did not amount to a waiver or modification of their payment obligation because the Amended Declaration for the association provides that the failure of Miller Lakes to assess an owner "shall not be deemed a waiver, modification, or release of any Owner from any obligation to pay assessments." Yet, "Owner" is a term of art under the Amended Declaration. Specifically, the term is defined as "a Person who holds the record title to any Lot * * *," which is defined as "a platted lot situated within the Properties * * *." "Properties" is defined as "real property * * * subjected to this Declaration * * * and * * * such additions thereto as may be made by [Miller Lakes] * * * by amendment or supplementary declaration of all or any portion of the Additional Property * * *." Further, "Additional Property" is defined as "additional real property subject to [Miller Lakes'] unilateral right of annexation as provided in this Declaration

* * *." Miller Lakes has made no attempt to explain how the Schmitts are "Owner[s]" under the Amended Declaration. In fact, in his affidavit, Miller Lakes' general counsel specifically stated that the Defendants' properties were "not under the jurisdiction of [Miller Lakes] and [were] *not expressly subject to the Amended Declaration of Covenants, Conditions and Restrictions for Miller Lakes * * *.*" (Emphasis added.) If the Defendants were not subject to the Amended Declaration, then Miller Lakes could not rely on one of its provisions to their detriment. Because Miller Lakes has failed to show that the non-waiver provision in the Amended Declaration applies here, we reject its argument that the non-waiver provision created a genuine issue of material fact for trial.

{¶32} Likewise, we must conclude that the Amended Easement Agreement and check signed by Ms. Schmitt did not create a genuine issue of material fact for trial. Both the Amended Easement Agreement and check are dated more than a year after Miller Lakes filed suit against the Schmitts. Ms. Schmitt explained that she signed both items because she was under the impression that she and Miller Lakes had reached a settlement. She also stated, however, that the settlement never came to fruition and that her attorney had asked for the return of her check. Miller Lakes did not present any evidence to rebut Ms. Schmitt's assertion that the agreement and check stemmed from a defunct settlement. In fact, Miller Lakes failed to offer any contextual evidence for the agreement and check, such as deposition testimony or an affidavit that might shed light on either item. Given Ms. Schmitt's affidavit, the agreement and check, standing alone, do not demonstrate a genuine issue of material fact for trial. As such, we must conclude that Miller Lakes failed to satisfy its reciprocal *Dresher* burden. *See Dresher*, 75 Ohio St.3d at 293, quoting Civ.R. 56(E).

{¶33} Even viewing the evidence in a light most favorable to Miller Lakes, we cannot conclude that the trial court erred by entering summary judgment in favor of the Schmitts on Miller Lakes' claims for declaratory judgment. We also cannot conclude that it erred when it determined that the remaining claims for unjust enrichment, quantum meruit, and specific damages were moot as a result of its ruling on the claim for declaratory judgment. Consequently, Miller Lakes' first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ENTERING SUMMARY JUDGMENT IN FAVOR OF [THE COOPERS] * * *, AND [THE WIGHAMS] ON ALL CLAIMS SET FORTH IN THE SECOND AMENDED COMPLAINT OF MILLER LAKES.

{¶34} In its second assignment of error, Miller Lakes argues that the trial court erred when it entered summary judgment in favor of the Wighams and the Coopers on its claims for declaratory judgment, unjust enrichment, quantum meruit, and specific damages. We disagree.

{¶35} We incorporate the summary judgment standard of review set forth in Miller Lakes' first assignment of error. Thus, we examine the record to determine whether the Wighams and the Coopers demonstrated that there were no genuine issues of material fact for trial, that they were entitled to judgment as a matter of law, and that it appeared from the evidence that reasonable minds could only come to a conclusion in their favor. *Temple*, 50 Ohio St.3d at 327.

{¶36} As previously noted, "the primary purpose in construing an easement is to ascertain the parties' intent." *Murray*, 95 Ohio App.3d at 219. If a written easement is unambiguous, courts generally will interpret the easement according to its plain language. *Zagrans*, 2009-Ohio-2942, at ¶ 9. *Accord Desantis*, 2005-Ohio-4661, at ¶ 10 ("Courts presume that the intent of the parties to a contract resides in the language they chose to employ in the

agreement."). If, however, "there is no specific delineation of the easement in the instrument, or if the delineation is ambiguous, then a court may look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement." *Murray* at 219. *Accord Henry v. Murfin*, 9th Dist. Summit No. 16530, 1995 WL 324058, *2 (May 31, 1995) (parol evidence admissible to interpret easement where it was silent as to exclusivity of the easement area).

{¶37} There is no dispute that the deeds for both the Wighams and the Coopers contain easements over Miller Lake Road for purposes of ingress and egress. There also is no dispute that neither deed expressly imposes any reciprocal obligation upon them in exchange for their respective easements. Because the evidence pertaining to the Wighams and the Coopers differs in some respects, we separately analyze the trial court's award of summary judgment to each of them.

**The Wighams**

{¶38} In moving for summary judgment against Miller Lakes, the Wighams relied upon the Coopers' affidavit, the affidavit of David Wigham, the September 2006 letter the Wighams received from the president of Miller Lakes, and the deposition of Joe Jacobs. In his affidavit, Mr. Wigham averred that he and his wife purchased their property from Joe and Helen Jacobs in 1998. He stated that, before purchasing their property, they spoke with Mr. Jacobs and Mindy Laverty, the former president of Miller Lakes, about the homeowners association. According to Mr. Wigham, both Mr. Jacobs and Ms. Laverty represented that membership in the association was optional and that Miller Lakes did not charge non-members for the maintenance of Miller Lake Road. Mr. Wigham averred that he and his wife decided not to join Miller Lakes and, from 1998 to 2006, Miller Lakes never sought to charge them any maintenance or repair costs.

Meanwhile, the Wighams routinely maintained the portion of the easement property between Miller Lake Road and their property at no cost to the association.

{¶39} Mr. Jacobs confirmed that, from 1984 to 1998, he and his wife were the owners of the Wighams' property. He could not definitively say whether he had ever been asked to make maintenance payments to AMPC or the association during that time period because so many years had passed. He testified, however, that, to the best of his recollection, he did not recall anyone ever asking him or his wife to contribute to any maintenance expenses. Further, he testified that he could not recall ever actually paying AMPC or Miller Lakes any maintenance fees during that time. It was Mr. Jacobs' impression that AMPC/Miller Lakes handled all of the maintenance at its own expense.

{¶40} This Court previously outlined the September 2006 letter that the Wighams received from Mr. Briggs, the current president of Miller Lakes. In the letter, Mr. Briggs asked the Wighams to begin sharing expenses for the maintenance and/or repair of Miller Lake Road and the association's private sewer line because "[t]o date, [Miller Lakes] ha[d] paid all of [those] expenses * * *." The Wighams pointed to the letter as evidence that, prior to 2006, they had never been charged for any maintenance or repair expenses to the common areas of Miller Lakes. Additionally, they relied upon the Coopers' affidavit, in which the Coopers likewise averred that, until 2006, Miller Lakes had never asked them to contribute to any maintenance or repair expenses.

{¶41} In defending against the Wighams' motion for summary judgment and arguing in support of its own motion, Miller Lakes relied upon case law involving dominant and servient estates. *See Colace v. Wander*, 5th Dist. Richland No. 2006CA0005, 2006-Ohio-7094; *Market Enterprises, Inc. v. Summerville*, 5th Dist. Stark No. 2001CA00315, 2002-Ohio-3692. Miller

Lakes argued that, as holders of a dominant estate, the Wighams bore the burden of maintaining their easement and/or compensating Miller Lakes for doing so. It was Miller Lakes' position that the law does not require the owner of a servient estate to bear the entire cost or burden of maintaining an easement.

{¶42} The trial court determined that, because the Wighams' deed was silent as to any maintenance or payment obligation, it was appropriate to consider the history and conduct of the parties in interpreting their easement. The court found that, by virtue of the Amended Declaration, Miller Lakes was expressly obligated to maintain its common areas. It further found that both the Wighams and Miller Lakes had routinely maintained portions of the easement property at their own expense for many years. Consequently, the court essentially ordered the parties to preserve the status quo by continuing to maintain and/or repair the areas that they had in the past at their own expense. Miller Lakes argues that the court erred by doing so because equity demands that the owner of a dominant estate be either solely or partially responsible for the cost of maintaining and/or repairing his or her easement property.

{¶43} In *Market Enterprises, Inc. v. Summerville*, the Fifth District considered whether the holder of a dominant estate should share in the cost of maintaining and repairing an easement. *See Market Enterprises, Inc.* at ¶ 2-8. There, Market Enterprises deeded to Mr. Summerville certain property that included a parking lot easement. The deed was silent as to who would be responsible for maintaining and repairing the easement, but Market Enterprises soon incurred those expenses. Although it immediately and repeatedly asked Mr. Summerville to pay a share of the expenses it had incurred, Mr. Summerville refused. Market Enterprises then brought suit to collect Mr. Summerville's pro rata share.

{¶44} On appeal, the Fifth District upheld the trial court's decision to order Mr. Summerville to pay his portion of the expenses. *Id.* at ¶ 12. Noting that the deed was silent as to any payment obligation, the court held that, unless the grantor of an easement expressly agrees to be responsible for maintenance and repairs, it is the grantee's obligation to repair the easement when those repairs are necessary (1) for his own use, or (2) to prevent the easement from becoming an annoyance or nuisance. *Id.* at ¶ 11-12. Because the parties jointly used the easement property and there was evidence that it had become a nuisance, the court found that it was appropriate for them to share in the repair expenses. *Id.*

{¶45} In *Colace v. Wander*, the Fifth District likewise upheld a trial court's decision to split the repair costs for an easement between its grantor and grantee. *See Colace*, 2006-Ohio-7094, at ¶ 52-68. There, the deed was silent as to any maintenance or repair obligations, but the parties had shared in some of the repair costs for a number of years and the grantor had not expressly undertaken sole responsibility for them. Because the easement was in need of serious repair and was jointly used by the parties, the Fifth District affirmed the lower court's decision to apportion the maintenance and repair expenses. *Id.* at ¶ 61-68.

{¶46} The case at hand is unlike *Market Enterprises, Inc. v. Summerville* and *Colace v. Wander* in several respects. First, unlike the grantors in those cases, Miller Lakes expressly assumed responsibility for the maintenance and repair of its common areas. While the Wighams' deed is silent as to a maintenance or repair obligation, the Amended Declaration for the association is not. It specifically obligates Miller Lakes to maintain and repair Miller Lake Road, the association's private utilities, and its other common areas. Thus, Miller Lakes expressly agreed to undertake an obligation that the grantors in the Fifth District cases did not.

**{¶47}** Second, unlike the parties in the Fifth District cases, Miller Lakes and the Wighams do not have a history of either sharing expenses or asking each other to contribute to the sharing of expenses. The parties in *Colace* shared easement-related expenses for at least five years before they reached an impasse with regard to the repair of the easement. *See Colace* at ¶ 6. Meanwhile, the grantor in *Market Enterprises, Inc.* asked the grantee to contribute to repair expenses soon after incurring them and continued to do so for a period of several years before filing suit. *See Market Enterprises, Inc.*, 2002-Ohio-3692, at ¶ 2-5. As between Miller Lakes and the Wighams, no such evidence exists. Thus, the case at hand is distinguishable from the cases upon which Miller Lakes relied.

**{¶48}** Because the Wighams' deed was silent as to any maintenance or repair obligation, the trial court could "look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement." *Murray*, 95 Ohio App.3d at 219. *Accord Henry*, 1995 WL 324058, at *2. The Wighams set forth evidence that neither AMPC, nor Miller Lakes had ever charged them or their predecessors in title in conjunction with any maintenance or repair expenses incurred by the association. In his affidavit, Mr. Wigham attested that he and his wife spoke with Mindy Laverty, the former president of Miller Lakes, before they bought their property and she specifically told them that the association did not charge non-members for maintenance to Miller Lake Road. Mr. Briggs, the current president of Miller Lakes, acknowledged as much in his September 2006 letter to the Wighams, in which he indicated that, for the first time, Miller Lakes was asking owners who did not belong to the association to share in its expenses. Additionally, Mr. Jacobs testified that, between the time he and his wife purchased their property in 1984 and deeded it to the Wighams in 1998, he did not recall ever paying or being asked to pay Miller Lakes for maintenance or repairs. The Wighams, therefore,

set forth evidence that they and their predecessors in title used their easement for 31 years without AMPC or Miller Lakes even suggesting that the easement created a reciprocal obligation.

{¶49} Having reviewed the record, we cannot conclude that the trial court erred when it determined that (1) the Wighams satisfied their initial burden on summary judgment, and (2) Miller Lakes failed to satisfy its reciprocal burden. *See Dresher*, 75 Ohio St.3d at 293, quoting Civ.R. 56(E). The evidence is such that, for many years, AMPC/Miller Lakes and the Wighams each performed their own maintenance and/or repairs at their own expense. The case law upon which Miller Lakes relied is distinguishable from the case at hand, and Miller Lakes did not point to any evidence to demonstrate the existence of a genuine issue of material fact for trial. Even viewing the evidence in a light most favorable to Miller Lakes, we find no error in the court's decision to award summary judgment to the Wighams on Miller Lakes' claim for declaratory judgment. We also cannot conclude that it erred when it determined that the remaining claims for unjust enrichment, quantum meruit, and specific damages were moot as a result of its ruling on the claim for declaratory judgment. To the extent Miller Lakes' second assignment of error relates to the Wighams, it is overruled.

**The Coopers**

{¶50} In moving for summary judgment against Miller Lakes, the Coopers relied upon their own affidavit, in which they outlined the conduct of the parties over a number of years. The Coopers averred that they purchased their property in 1977 and, at that time, "it was represented to [them] that [AMPC] was responsible for maintenance of the paved portion of Miller Lake Road." They further averred that, from 1977 to 2006, they never received any maintenance or payment demands from AMPC/Miller Lakes. Because their deed was silent as to

any maintenance or payment obligation and a significant period of time had elapsed without AMPC or Miller Lakes claiming that such an obligation existed, the Coopers argued that they were entitled to summary judgment.

{¶51} In defending against the Coopers' motion for summary judgment and arguing in support of its own motion, Miller Lakes relied upon the same Fifth District case law outlined above. Further, it relied upon the affidavit of Sandra Hull, a resident of Miller Lakes. In her affidavit, Ms. Hull averred that she and her husband purchased their property in 1995 and, thereafter, made monthly payments to AMPC for the maintenance and repair of Miller Lake Road. According to Ms. Hull, those payments "continued until payments were made to Miller Lakes * * *." Ms. Hull averred that she attended a meeting at the Critchfield Law Firm along with Mr. Briggs, the Coopers, and several others. Ms. Hull did not indicate when the alleged meeting occurred, but stated that the purpose of the meeting was "to discuss allocation of the payments for the necessary maintenance and repair expenses among the owners using the [Miller Lake Road] easement * * *." According to Ms. Hull, at the meeting, "Norma S. Cooper indicated to all of us that she was not willing to continue making payments for maintenance and repair expenses for access to their property as she had been paying [AMPC] maintenance and repair expenses and she was not satisfied with the work that was performed by [AMPC] * * *." Miller Lakes pointed to the affidavit to refute the Coopers' assertion that they had never made maintenance and/or repair payments in conjunction with their easement.

{¶52} Because the Coopers' deed was silent as to any maintenance or payment obligation, the trial court considered the history and conduct of the parties in interpreting their easement. The court found that, by virtue of the Amended Declaration, Miller Lakes was expressly obligated to maintain its common areas. It further found that both the Coopers and

Miller Lakes had routinely maintained portions of the easement property at their own expense for many years. Consequently, the court essentially ordered the parties to preserve the status quo by continuing to maintain and/or repair the areas that they had in the past at their own expense.

{¶53} Miller Lakes argues that the court erred by awarding summary judgment to the Coopers because equity demands that the owner of a dominant estate be either solely or partially responsible for the cost of maintaining and/or repairing his or her easement property. It further argues that, at the very least, Ms. Hull's affidavit created a genuine issue of material fact for trial on the issue of whether the Coopers ever made prior payments for maintenance and/or repairs.

{¶54} For a party to withstand summary judgment, he or she must be able to point to a genuine issue of *material* fact. *Temple*, 50 Ohio St.2d at 327. "This Court has recognized that a 'material' fact is one which would impact the outcome of the suit under the applicable substantive law." (Internal quotations and citations omitted.) *Cook v. The Crossings, L.L.C.*, 9th Dist. Lorain No. 13CA010463, 2015-Ohio-923, ¶ 14. The trial court granted summary judgment to the Coopers on the basis that Miller Lakes had never sought to charge them for any maintenance or repairs until 2006, despite the fact that maintenance and repairs had been performed prior to that date. Nowhere in Ms. Hull's affidavit did she claim that the Coopers had ever made maintenance or repair payments to Miller Lakes or that Miller Lakes had ever asked them to do so. Instead, she stated that she overheard Ms. Cooper say she would no longer be making maintenance or repair payments *to AMPC*. Moreover, Ms. Hull prefaced that statement with assertions that she and her husband initially made monthly payments for maintenance and repair to AMPC, but then later made their payments to Miller Lakes. Thus, she confirmed that the two entities were separate and that AMPC did not collect payments once Miller Lakes took control.

{¶55} Ms. Hull did not indicate when Ms. Cooper allegedly said that she would no longer be making maintenance and repair payments to AMPC. The fact is, however, that AMPC ceded control of the homeowners association to Miller Lakes in 1999. At best, Ms. Hull's affidavit was evidence that, at some point at least seven years before Miller Lakes demanded money from the Coopers, they made maintenance and repair payments to AMPC. There was no evidence, however, that Miller Lakes ever sought to charge them for any maintenance or repairs before 2006, and that was the basis of the trial court's ruling. As such, we cannot conclude that any issue of fact that Ms. Hull's affidavit generated was a material one. *See id.* (defining a material issue as an outcome determinative one).

{¶56} We also cannot conclude that the Fifth District case law upon which Miller Lakes relied in support of its argument is dispositive here. As we explained above, both *Market Enterprises, Inc. v. Summerville* and *Colace v. Wander* are distinguishable from the instant case. Unlike the grantors in those cases, Miller Lakes undertook an express obligation for the maintenance and repair of its common areas by virtue of its Amended Declaration. *Compare Colace*, 2006-Ohio-7094, at ¶ 61-62; *Market Enterprises, Inc.*, 2002-Ohio-3692, at ¶ 12. Moreover, there is no evidence that the Coopers and Miller Lakes ever agreed to share the expenses or asked one another to do so before 2006. *Compare Colace* at ¶ 6; *Market Enterprises, Inc.* at ¶ 3-4. Because both cases are distinguishable from the instant case, they did not create a genuine issue of material fact for trial.

{¶57} The fact that the Coopers' deed was silent as to any maintenance or repair obligation allowed the trial court to "look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement." *Murray*, 95 Ohio App.3d at 219. *Accord Henry*, 1995 WL 324058, at *2. The Coopers set forth evidence that, since purchasing

their property in 1977, neither AMPC, nor Miller Lakes had ever charged them in conjunction with any maintenance or repair expenses. In their affidavit, they averred that AMPC/Miller Lakes had always handled the maintenance and repair of Miller Lake Road and that they had never been asked to contribute to any expenses incurred as a result of that maintenance and repair. Mr. Briggs, the current president of Miller Lakes, acknowledged as much in his September 2006 letter to the Wighams, in which he indicated that, for the first time, Miller Lakes was asking owners who did not belong to the association to share in its expenses. The Coopers, therefore, set forth evidence that they used their easement for almost 30 years without AMPC or Miller Lakes even suggesting that the easement created a reciprocal obligation.

{¶58} In responding to the Coopers' motion, Miller Lakes set forth case law from the Fifth District and the affidavit of Ms. Hull. As noted, however, the Fifth District case law is distinguishable and Ms. Hull's affidavit did not create a genuine issue of material fact for trial. That is because, at most, her affidavit is evidence that the Coopers may have made maintenance or repair payments to a different entity some seven years or more before Miller Lakes ever made a payment demand. Viewing the evidence in a light most favorable to Miller Lakes, we cannot conclude that the trial court erred when it determined that (1) the Coopers satisfied their initial burden on summary judgment, and (2) Miller Lakes failed to satisfy its reciprocal burden. *See Dresher*, 75 Ohio St.3d at 293, quoting Civ.R. 56(E). Accordingly, we find no error in the court's decision to award summary judgment to the Coopers. Further, we cannot conclude that it erred when it determined that the remaining claims for unjust enrichment, quantum meruit, and specific damages were moot as a result of its ruling on the claim for declaratory judgment. To the extent Miller Lakes' second assignment of error relates to the Coopers, it is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ACCEPTING EVIDENCE, FOR SUMMARY JUDGMENT PURPOSES, CONSISTING OF THE PRIOR STATEMENTS AND COMMENTS ALLEGEDLY MADE TO [THE SCHMITTS], [THE WIGHAMS] AND [THE COOPERS], AND THEIR PREDECESSORS IN TITLE, PRIOR TO THE TIME THEIR DEEDS WERE ACCEPTED AND RECORDED WITHOUT FIRST ESTABLISHING, BY CLEAR AND CONVINCING EVIDENCE, THAT DEED REFORMATION IS REQUIRED AND THAT THE DOCTRINE OF MERGER BY DEED DOES NOT APPLY TO THESE TRANSACTIONS.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW BY CONSIDERING PAROL AND EXTRINSIC EVIDENCE FOR SUMMARY JUDGMENT PURPOSES AS EXTRINSIC OR PAROL EVIDENCE WAS NOT REQUIRED TO DETERMINE THE INTENT OF THE PARTIES.

ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED AS A MATTER OF LAW BY RELYING ON THE HEARSAY STATEMENTS SUBMITTED BY [THE SCHMITTS], [THE WIGHAMS] AND [THE COOPERS] ADDRESSING COMMENTS BY PERSONS NOT NAMED AS PARTIES TO THIS PROCEEDING TO DETERMINE THE INTENT OF THE PARTIES AT THE TIME OF THE INTEGRATED REAL ESTATE AGREEMENT, THE HISTORY OF PRIOR PAYMENTS FOR MAINTENANCE AND REPAIR EXPENSES, AND THE NUMBER OF LOT OWNERS AT THE TIME OF THE INTEGRATED AGREEMENT.

{¶59} In its third, fourth, and fifth assignments of error, Miller Lakes argues that the trial court erred when it considered evidence regarding what the Defendants were told by third parties before purchasing their respective properties. Miller Lakes argues that the court could not consider any such statements because they constituted inadmissible hearsay as well as parol evidence.

{¶60} Initially, we note that, in its appellate brief, Miller Lakes has not specifically identified any of the statements concerned in the three foregoing assignments of error. *See* App.R. 16(A)(7). It categorically refers to the offending statements as those (1) "summarizing

what [the Defendants] were told by others prior to the time of the closing of their real estate transaction and/or made by others in their chain of title," and (2) "offered to allegedly demonstrate that there had been no prior payments or that [the Defendants] should not now be required to pay any invoices submitted by Miller Lakes." The Schmitts, however, did not have any predecessors in title and sought summary judgment based on the conduct in which they and Miller Lakes engaged over the years. It was only the Wighams and the Coopers who claimed in their respective affidavits that, before they purchased their property, third parties had told them that they would not be responsible for sharing in Miller Lakes' expenses. Absent further direction from Miller Lakes, we presume that those are the only statements with which it takes issue. *See id.* Consequently, in addressing these assignments of error, we limit our review to the evidence presented by the Wighams and the Coopers.

{¶61} To the extent Miller Lakes argues that the trial court erred by considering hearsay in its summary judgment decision, the record reflects that Miller Lakes forfeited its argument by failing to object in the court below. *See State v. Jordan*, 9th Dist. Summit No. 27005, 2014-Ohio-2857, ¶ 13. Miller Lakes points to two places in the trial court record where it allegedly preserved hearsay objections. In both instances, however, Miller Lakes merely made a single statement, noting that either the Wighams or the Coopers had relied on hearsay. It did not argue that the alleged hearsay was inadmissible or engage in any analysis targeted at showing that the statements were, in fact, hearsay. Moreover, it has not set forth a claim of plain error on appeal. Although a litigant still may argue plain error on appeal when he or she fails to preserve a hearsay objection, "this [C]ourt will not sua sponte undertake a plain [] error analysis if a [litigant] fails to do so." (Alterations sic.) *Hendy v. Wright*, 9th Dist. Summit No. 26422, 2013-Ohio-5786, ¶ 14, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41.

Assuming without deciding that the statements at issue are, in fact, hearsay, we will not address the merits of Miller Lakes' argument. That is because it did not preserve its hearsay argument in the court below and has not argued plain error on appeal. Miller Lakes' fifth assignment of error is overruled.

{¶62} Miller Lakes also argues that the trial court could not consider the third-party statements that the Wighams and the Coopers cited in support of their respective filings because (1) the court never found that their deeds/easements were ambiguous, and (2), under the merger by deed doctrine, prior agreements or representations cannot be used to set aside or reform a deed. Here, however, both the Wighams' and the Coopers' deeds were silent with respect to any maintenance or payment obligation(s) that their respective easements might have created. The Wighams and the Coopers never sought to reform or set aside their deeds; only to interpret them in light of their silence on that point. This Court has held that if "there is no specific delineation of the easement in [an] instrument, or if the delineation is ambiguous, then a court may look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement." *Murray*, 95 Ohio App.3d at 219. Indeed, we have specifically sanctioned the consideration of parol evidence to determine the parties' intent when a deed was silent as to "whether the rights and privileges attendant to [the] use [afforded by an easement] [were] shared between the parties or [were] exclusive in the grantee." *Henry*, 1995 WL 324058, at *2. Miller Lakes has not shown that it was error for the trial court to consider extrinsic evidence in interpreting the Wighams' and the Coopers' deeds. Accordingly, Miller Lakes' third and fourth assignments of error are overruled.

ASSIGNMENT OF ERROR VI

THE TRIAL COURT'S DECISION AWARDING SUMMARY JUDGMENT TO [THE WIGHAMS], [THE COOPERS] AND [THE SCHMITTS] FINDING THAT THERE EXISTED AN "UNSPOKEN MUTUAL UNDERSTANDING" OR "MUTUAL INTERPRETATION OF THE EASEMENT"; THAT THERE WERE ONLY FOUR LOT OWNERS AT THE TIME OF THE INTEGRATED REAL ESTATE AGREEMENT; AND THAT THERE WAS NO HISTORY OF PAYMENT OF MAINTENANCE AND REPAIR EXPENSES FOR 17 YEARS, CONSTITUTES AN ABUSE OF DISCRETION AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶63} In its sixth assignment of error, Miller Lakes argues that the trial court's decision to grant summary judgment to the Defendants constitutes an abuse of discretion and is against the manifest weight of the evidence. According to Miller Lakes, the trial court "misapplied the appropriate legal standards to its factual determinations, and the factual determinations of the Trial Court are not accurate." Miller Lakes makes no attempt, however, to explain how the court misapplied the legal standards in this matter. *See* App.R. 16(A)(7). Moreover, this Court will not review a summary judgment determination for weight or under an abuse of discretion standard of review. *See, e.g., Taylor v. Uhl*, 9th Dist. Lorain No. 13CA010441, 2014-Ohio-3090, ¶ 5; *Town & Country Co-op, Inc. v. Sabol Farms, Inc.*, 9th Dist. Wayne No. 11CA0014, 2012-Ohio-4874, ¶ 8-19. A summary judgment determination does not allow a trial court to weigh the evidence or choose among competing inferences. *See Taylor* at ¶ 5. Accordingly, we review summary judgment awards de novo. *Grafton*, 77 Ohio St.3d at 105. Because we have already reviewed the summary judgment awards here de novo, we need not do so again. Miller Lakes' sixth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING [MILLER LAKES'] MOTION FOR PARTIAL SUMMARY JUDGMENT ON ALL CLAIMS SET FORTH IN THE SECOND AMENDED COMPLAINT EXCEPTING ONLY THE DAMAGE CLAIMS ADDRESSING THE COMPUTATION OF THE CORRECT AMOUNT TO BE CHARGED TO EACH LANDOWNER FOR THE MAINTENANCE, REPAIR AND REPLACEMENT EXPENSES.

{¶64} In its seventh assignment of error, Miller Lakes argues that the trial court erred when it denied Miller Lakes' motion for summary judgment on its claims for declaratory judgment, unjust enrichment, and quantum meruit. Miller Lakes essentially reargues all of the points that it made in opposing the Defendants' respective motions for summary judgment on its claims against them. It does not rely upon any new evidence or legal theory in support of its argument. Because we have already determined that the evidence here supports a summary judgment determination in favor of the Defendants, we reject Miller Lakes' assertion that it was entitled to summary judgment. Accordingly, its seventh assignment of error is overruled.

III.

{¶65} Miller Lakes' assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JAMES M. RICHARD, Attorney at Law, for Appellant.

ROBERT J. REYNOLDS, Attorney at Law, for Appellees.

TIMOTHY B. PETTORINI, Attorney at Law, for Appellees.

ROBERT D. KEHOE, Attorney at Law, for Appellees.